### In re IRONSIDES, INC., Debtor.

### Bankruptcy No. 38202325.

United States Bankruptcy Court,
W.D. Kentucky.

Dec. 20, 1983.

August A. Klapheke, Charles I. Sandmann, Louisville, Ky., for debtor.

Frank Yates, Louisville, Ky., for Stewart Smythe.

Ben J. Talbott, Jr., Louisville, Ky., for Business Development Corp. and Kentucky Development Finance Authority.

Richard A. Getty, Louisville, Ky., for petitioning unsecured creditors.

Charles E. Peyton, Louisville, Ky., trustee.

## MEMORANDUM AND ORDER

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Our order of November 10, 1983, converting the Chapter 11 proceeding of Ironsides, Inc. to a liquidation case, upon the debtor's own motion, has precipitated a flurry of final salvage efforts by a stockholder and the unsecured creditors' committee. The efforts take the form of motions (a) to set aside or reconsider our order of conversion; (b) to dismantle and reassemble equity ownership of the concern in favor of the stockholder Stewart Smythe, (c) to appoint Smythe as debtor-in-possession, and (d) to authorize the employment of counsel for Smythe.

The motion to set aside or reconsider does point out one clearly erroneous fact contained in the earlier order. We had commented that "(t)here had been broad suggestions of the possibility of an alternative Chapter 11 plan being formulated and submitted by the unsecured creditors' committee, friendly to Smythe, but none has been forthcoming..." Order of November 10, 1983, 34 B.R. 337 at p. 339. In point of fact, such a plan had been filed with the Court. But other than being put to record, the plan was not the subject of any further advocacy or action; its very dormancy explains why it was overlooked by the Court in entering the order of dismissal.

The fact that such a plan is in the file does not alter the basis of our earlier order; our reasons for conversion we are prepared to let stand as they have been expressed.

Our comments concerning the absence of an alternative plan were tangential to, or at most supplementary of, the central findings and conclusions which were stated early in the opinion. Out of respect for the motion at hand, however, we will treat the fact of filing of the alternative plan *as though it were material,* even though we do not believe it to be.

Smythe argues that under the alternative plan it would be possible to initially raise just under $100,000 to revitalize Ironsides. The amount of fresh capital thus sought to be raised is so comparatively small, considering the needs of the company, as not to justify the ongoing supervision and protection of a Chapter 11 court. The court-appointed examiner in this case, who recommended the appointment of an impartial trustee, projected the immediate cash needs of the company at $500,000—and his estimate *presupposed the existence of a plant and specialized equipment.* With the plant and equipment now gone, the actual cash needs would likely be many times the proposed $100,000.

In other words, even if the alternative plan had been presented in the fully required procedural posture, and even if it were redocketed and considered in detail by the court, the underlying question of feasibility would loom so large as to be unanswerable. The venture capital business is the riskiest business of all, and for this Court to sanction its embarkation at this late stage, with an initial funding commitment of no more than would be required to cover the administrative expenses of the case, would be to endorse a daydream made large.

Particularly should a speculative money-raising proposal be avoided where it is predicated, as Smythe's other post-conversion motions indicate, on a court-mandated wholesale transfer of ownership of the defunct corporation. Were the alternative plan to be restored to the docket and the equity ownership issue permitted to become a real one, it doubtless would be vigorously controverted by those stockholders who even now are still locked in combat with

Smythe in a pending federal district court action. The prospect of another "boardroom battle being waged in a Chapter 11 courtroom," *In re Chou-Chen Chemicals, Inc.,* 31 B.R. 842, 844 (Bkrtcy.W.D.Ky.1983), will not be repeated. There is no education to be earned in the second kick of a mule.[1]

Although it may be unnecessary, we will reiterate here our central thesis in ordering the conversion of this case: A commitment to an ongoing effort by the debtor is crucial to Chapter 11 viability, and the debtor's motion to convert is accorded the greatest weight because of that practicality. Here, the debtor not only has successfully moved to convert, but has opposed this motion to reopen the question.

This order should be taken to supplement our earlier order insofar as we now correct the error of fact concerning the filing of an alternative plan. However, since that fact is not considered necessary to the result earlier reached, it is hereby ORDERED that the motion to reconsider is hereby OVERRULED except as herein provided, and the conversion directed by the earlier order is reiterated and reaffirmed.

In light of our treatment of the motion to further reconsider the earlier order, it is unnecessary to rule on the remaining post-conversion motions.

This is a final order.

---

1. Exact authorship of this bromide is lost in the shrouds of Kentucky political history. Our use of it should not be taken to ascribe any metaphoric asininity to either counsel for Smythe, who was a participant in the Chou-Chen matter, nor to the court itself, but to the Chou-Chen syndrome at large.