EDITH HOT J,AN JONES, Circuit Judge.
 

 The debtor, Little Creek Development Company (Little Creek), appeals from an order of the bankruptcy court lifting the automatic stay so that the secured creditor, Commonwealth Mortgage Corporation (Commonwealth), could foreclose on Little Creek’s single asset, two parcels of undeveloped real estate. The principal issue on appeal is whether the bankruptcy court was clearly erroneous in finding that “cause” to lift the stay pursuant to 11 U.S.C. § 362(d)(1) could be based solely on the remarks of counsel for Little Creek that the bankruptcy petition was filed in order to escape the necessity of posting a substantial bond in an ongoing state court proceeding. We find that more evidence was necessary to support the bankruptcy court’s conclusions, and we therefore remand with instructions.
 

 I. BACKGROUND
 

 Little Creek obtained a loan from Commonwealth for the purpose of developing town homes on two tracts of land in Hurst, Texas, a suburb of Dallas. In March 1984, the parties signed promissory notes, deeds of trust, and other financing documents that would commit Commonwealth to fund up to $4.7 million for the project. Little Creek purchased the tracts of land for $675,000, but was unexpectedly delayed in obtaining building permits from the City of Hurst. Little Creek has not yet broken ground on the project. In January 1985, Commonwealth informed Little Creek of its intention to accelerate the debt and foreclose its mortgages, based on Little Creek’s failure to obtain building permits and a satisfactory replacement guarantor.
 

 Little Creek preempted foreclosure proceedings in March by filing a wide-ranging complaint in state court, alleging causes of action based upon the Texas Deceptive Trade Practices Act, breach of contract, and unconscionability. An
 
 ex parte
 
 temporary restraining order was issued against foreclosure. In early May, Little Creek obtained a preliminary injunction, conditioned upon its posting a bond for $50,000 to forestall foreclosure during the month of May, and thereafter, a bond for $1,250,000 pending the conclusion of the litigation. Little Creek could not post the required larger bond in June.
 

 Again staving off foreclosure, Little Creek filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Commonwealth moved in the bankruptcy court for relief from the automatic stay, 11 U.S.C. § 362(d), seeking to foreclose the property. Little Creek’s response to that motion defensively raised most of the issues presented in the pending state court action. Little Creek also sought leave to take numerous depositions and to engage in extensive discovery.
 

 The bankruptcy court held two hearings on the motion for relief from the stay. In the first hearing, Commonwealth indicated that Little Creek’s debt exceeded $1,400,-000, and that its mortgage was perfected. Through an appraiser, Commonwealth claimed that the value of Little Creek’s property was only $775,000. Due to the court’s time constraints, Little Creek neither pursued its questions concerning the amount of the debt nor completed its cross-examination of Commonwealth’s appraiser. By the time of the second stay hearing, the bankruptcy court had granted a motion to strike Little Creek’s defenses, finding them inappropriate for consideration in that context, whereupon counsel for Little Creek uttered candid remarks. In attempting to explain why Little Creek should be allowed to present evidence of alleged modification of the loan agreements, counsel stated:
 

 The Debtor in this case has already sought and obtained an injunction in State Court against the foreclosure sale and was unable to continue that by virtue of an increasing bond requirement. And that was the reason it [precipitated] this filing in this court. * * * And we feel like this is the proper [forum] to consider the issues relative to a proper acceleration of the debt and foreclosure
 
 *1071
 
 sale because we don’t feel like there’s any other [forum] available to the Debtor in this case.
 

 Co-counsel then reiterated the debtor’s position:
 

 Now, if we'were able to carry forward with that type of bond, we’d still be in State Court. The reason we’re in Bankruptcy Court is because the sole asset of the corporation is [jeopardized] by the fact that the lenders committed some acts, which we’ve alleged to this court. The same reasoning by going to State Court for our remedy — going to State Court for our remedy isn’t applicable here. Because State Court has granted our remedy, we’re not able to bond the amount in State Court and that’s why we’re in Bankruptcy Court seeking our remedy here.
 

 Based on these representations, which Little Creek’s counsel later sought to modify, the court
 
 sua sponte
 
 found that
 

 the admissions of counsel coupled with Little Creek’s prior attempts to incorporate the state court causes of action into the stay litigation make it readily apparent that Little Creek simply wanted to transfer the litigation from state court to bankruptcy court where it could have an automatic injunction and escape the state court’s bond requirement.
 

 These actions, in the bankruptcy court’s view, rendered the debtor’s petition for reorganization a “bad faith” proceeding. The court subsequently entered an order granting Commonwealth relief from the stay for “cause,” finding that Little Creek lacked good faith in filing the petition. The district court affirmed the bankruptcy court’s disposition.
 

 This court temporarily stayed the lift pending expedited appeal, and our jurisdiction to review the final order of the bankruptcy court derives from 28 U.S.C. § 158(d). Because we have concluded that the record was insufficiently developed to justify the bankruptcy court’s conclusion, it is desirable to provide guidance for the court’s benefit on remand.
 
 [1]
 

 II. THE GOOD FAITH PRINCIPLE AS “CAUSE” FOR LIFTING THE STAY
 

 Bankruptcy is an equitable remedy whereby a debtor is clothed with the protection of an automatic stay, preventing his creditors from acting against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a “fresh start” through the orderly disposition of assets to satisfy his creditors.
 
 See GATX Aircraft Corp. v. M/V COURTNEY LEIGH,
 
 768 F.2d 711, 716 (5th Cir.1985);
 
 In re Sun Country Dev., Inc.,
 
 764 F.2d 406, 408 (5th Cir.1985);
 
 In re Winshall Settlor’s Trust,
 
 758 F.2d 1136, 1137 (6th Cir.1985);
 
 Browning v. Navarro,
 
 743 F.2d 1069, 1083 (5th Cir.1984). Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.
 
 See In re Victory Constr. Co.,
 
 9 B.R. 549, 551-60 (Bankr.C.D.Cal.1981) (containing an excellent historical survey).
 
 See, e.g., Fidelity
 
 
 *1072
 

 Assur. Assoc. v. Sims,
 
 318 U.S. 608, 621, 63 S.Ct. 807, 813-14, 87 L.Ed. 1032 (1943);
 
 A-COS Leasing Corp. v. Wheless,
 
 422 F.2d 522, 523-25 & n. 1 (5th Cir.1970). Such a standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with “clean hands.” The Supreme Court aptly summarized the bankruptcy court’s responsibility to enforce a standard of good faith when it stated:
 

 “A
 
 court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest.” ... These principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization....
 

 American United Mut. Life Ins. Co. v. City of Avon Park,
 
 311 U.S. 138, 145, 61 S.Ct. 157, 161-62, 85 L.Ed. 91 (1940) (quoting
 
 SEC v. United States Realty & Improvement Co.,
 
 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1239 (1940)).
 

 Like its predecessor statutes, and based on the foregoing considerations, the Bankruptcy Code of 1978 has been endowed with requirements of good faith in the construction of many of its provisions.
 
 See
 
 Ordin,
 
 The Good Faith Principle in the Bankruptcy Code: A Case Study,
 
 38 Bus. Law. 1795 (1983).
 
 See also Winshall Settlor’s Trust,
 
 758 F.2d at 1137;
 
 In re Moog,
 
 774 F.2d at 1077;
 
 Coastal Cable T.V.,
 
 709 F.2d at 764-65. Litigation concerning good faith which is pertinent to this case has arisen under § 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), governing relief from the automatic stay, and under 11 U.S.C. § 1112(b), which permits dismissal or conversion of a reorganization case. Both of these provisions allow relief to be granted “for cause,” a term not defined in the statute so as to afford flexibility to the bankruptcy courts.
 
 See, e.g., Victory Constr.,
 
 9 B.R. at 558-60 (“cause” is any reason cognizable to the equity power and conscience of the court as constituting an abuse of the bankruptcy process). Numerous cases have found a lack of good faith to constitute “cause” for lifting the stay to permit foreclosure or for dismissing the case.
 
 [2]
 

 Determining whether the debtor’s filing for relief is in good faith depends largely upon the bankruptcy court’s on-the-spot evaluation of the debtor’s financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually ex
 
 *1073
 
 ist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors’ liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The “new debtor syndrome,” in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.
 
 [3]
 

 Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor’s “terminal euphoria.” The Sixth Circuit in
 
 Winshall Settlor’s Trust,
 
 758 F.2d at 1137, aptly noted that
 

 [t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state.
 
 See In re Dolton Lodge Trust No. 35188,
 
 22 B.R. 918, 922 (Bankr.N.D.Ill.1982). “[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its
 
 raison d’etre....” In re Ironsides, Inc.,
 
 34 B.R. 337, 339 (Bankr.W.D.Ky.1983).
 

 Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions.
 

 III. WHETHER THE BANKRUPTCY COURT’S FINDINGS WERE CLEARLY ERRONEOUS
 

 Standing alone, the conclusions of the bankruptcy court in this case, based solely on the statements of the debtor’s counsel and the litigation tactic of attempting to retry the state court action in the course of the hearing on the motion for relief from the stay, did not provide sufficient evidence to show lack of good faith.
 
 See, e.g., In re Route 202 Corp.,
 
 37 B.R. 367, 373 (Bankr.E.D.Pa.1984) (filing a bankruptcy petition on the eve of a scheduled foreclosure sale is not, by itself, sufficient to constitute bad faith). When compared with the several general indicia of bad faith previously discussed, these facts do not rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted in this case.
 
 See, e.g., American Property Corp.,
 
 44 B.R. at 182-83;
 
 Corp. Deja Vu,
 
 34 B.R. at 848-51;
 
 Lotus Inv.,
 
 16 B.R. at 595;
 
 Eden Assoc.,
 
 13 B.R. at 584-85.
 

 The entire course of the bankruptcy court’s consideration of the good faith issue, from the quoted remarks of debtor’s counsel through a brief argument on oral motion for rehearing, occupies only a few
 
 *1074
 
 pages of trial transcript. No witnesses were presented. The debtor was afforded no prior notice of the issue, which had not been specifically raised by Commonwealth in its motion for relief from the stay.
 

 The abrupt ruling of the bankruptcy court here contrasts with the approach of the Ninth Circuit Bankruptcy Appellate Panel in
 
 Thirtieth Place,
 
 which “considers] the determination of this question [whether to dismiss a case for bad faith] to require an examination of all the particular facts and circumstances in each case.” 30 B.R. at 505. In reversing a bankruptcy court determination that had rejected a creditor’s motion to dismiss the case or lift the stay, the Bankruptcy Appellate Panel thoroughly analyzed the debtor’s condition, which amounted to a “new debtor” bankruptcy filing on the eve of foreclosure, and concluded:
 

 The predominant purpose in filing the petition was to prevent foreclosure upon the heavily encumbered property. It must be noted that there was no plan contemplated for the infusion of capital, no gain in managerial expertise, no history of past business conduct, no employees and indeed, no current business activity on the date of the commencement of the case nor are there any reasonable prospects for the conduct of future business.
 

 Id.
 

 We do not, in reversing the bankruptcy court’s somewhat hasty conclusion in this case, imply that a finding of lack of good faith would be improper after fuller consideration of the issue on remand. Unless facts appear in the record that clearly warrant a finding of bad faith, however, a debtor should ordinarily be given an opportunity to respond to a charge of abuse of the bankruptcy process.
 

 From the foregoing discussion, it should be clear that a debtor may not counter allegations of bad faith solely with an attempt to relitigate the issues presented in its state court case. If the circumstances surrounding Little Creek’s filing demonstrate that the goals of the bankruptcy laws cannot be fulfilled by permitting Little Creek to stave off foreclosure by Commonwealth, then it makes no difference whether Little Creek had, or has, a cause of action for damages against Commonwealth in state court. Additionally, as the issue of good faith arose during a hearing on a motion to lift the stay, Little Creek will not be permitted to undermine the expedited treatment of this motion,
 
 see
 
 11 U.S.C. § 362(e), by interposing the state court issues.
 
 See In re Johnson,
 
 756 F.2d 738, 740 (9th Cir.),
 
 cert. denied,
 
 — U.S. -, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985);
 
 In re Born,
 
 10 B.R. 43, 48-50 (Bankr.S.D.Tex.1981). The bankruptcy court was correct in striking the extrinsic state law defenses from the debtor’s response to the motion to lift the stay.
 

 For these reasons, the judgments of the bankruptcy court and the district court are REVERSED and this cause is REMANDED for further proceedings not inconsistent herewith.
 

 [1]
 

 . The parties agree that the bankruptcy court has the power to raise the issue of good faith
 
 sua sponte
 
 as an inquiry into its jurisdiction, and former Bankruptcy Act precedent in this circuit confirms their position.
 
 See In re Metropolitan Realty Corp.,
 
 433 F.2d 676, 679 (5th Cir.1970) (Wisdom, J.) ("As soon as the lack of good faith affirmatively appeared, the district court acted properly in dismissing the petition even though the plan stage had not been reached") (citations omitted),
 
 cert. denied,
 
 401 U.S. 1008, 91 S.Ct. 1251, 28 L.Ed.2d 544 (1971);
 
 Southern Land Title Corp. v. Mitchell,
 
 375 F.2d 874, 877 (5th Cir.1967).
 
 See generally In re Coastal Cable T.V., Inc.,
 
 709 F.2d 762, 764-65 (1st Cir.1983) (decided under the Bankruptcy Code).
 
 Compare In re Gusam Restaurant Corp.,
 
 737 F.2d 274, 276 (2d Cir.1984) (not discussing the issue of good faith but stating that bankruptcy courts can dismiss or convert a case under 11 U.S.C. § 1112(b) only "on request of a party in interest”)
 
 with In re Moog,
 
 774 F.2d 1073, 1077 (11th Cir.1985) (“absent any evidence of a lack of good faith on the part of the petitioner, the bankruptcy court erred in dismissing the Chapter 11 petition
 
 sua sponte
 
 ”). Lower courts have assumed that the bankruptcy courts can act
 
 sua sponte
 
 to insure good faith.
 
 See In re Harvey Probber, Inc.,
 
 44 B.R. 647, 649-53 (Bankr.D.Mass.1984);
 
 Furness v. Lilienfield,
 
 35 B.R. 1006, 1010 (D.Md.1983). Our disposition renders further analysis of this question unnecessary.
 

 [2]
 

 .
 
 See In re Thirtieth Place, Inc.,
 
 30 B.R. 503, 505-06 (Bankr.App. 9th Cir.1983);
 
 In re Talladega Steaks, Inc.,
 
 50 B.R. 42, 43-44 (Bankr.N.D.Ala.1985);
 
 In re Kinney,
 
 51 B.R. 840, 845-46 (Bankr.C.D.Cal.1985);
 
 In re Silver,
 
 46 B.R. 772, 773-74 (D.Colo.1985);
 
 In re Volpe,
 
 53 B.R. 46, 47-48 (Bankr.M.D.Fla.1985);
 
 In re Martin,
 
 51 B.R. 490, 493-95 (Bankr.M.D.Fla.1985);
 
 In re Setzer,
 
 47 B.R. 340, 344-45 (Bankr.E.D.N.Y.1985);
 
 In re Port Richey Service Co.,
 
 44 B.R. 634, 635 (Bankr.M.D.Fla.1984);
 
 In re Winn,
 
 43 B.R. 25, 28 (Bankr.M.D.Fla.1984);
 
 Basin Elec. Power Co-op v. Midwest Processing Co.,
 
 47 B.R. 903, 908-10 (D.N.D.1984),
 
 aff’d,
 
 769 F.2d 483 (8th Cir.1985);
 
 In re Scott,
 
 42 B.R. 35, 38-39 (Bankr.D.Ore.1984);
 
 Furness,
 
 35 B.R. at 1010-13;
 
 In re Corp. Deja Vu,
 
 34 B.R. 845, 846-47, 850 (Bankr.D.Md.1983);
 
 In re 299 Jack-Hemp Assoc.,
 
 20 B.R. 412, 413-14 (Bankr.S.D.N.Y.1982);
 
 In re Lotus Inv., Inc.,
 
 16 B.R. 592, 595-96 (Bankr.S.D.Fla.1981).
 
 See also Winshall Settlor’s Trust,
 
 758 F.2d at 1137;
 
 In re Albany Partners, Ltd.,
 
 749 F.2d 670, 673-74 (11th Cir.1984).
 

 [3]
 

 .
 
 See Thirtieth Place,
 
 30 B.R. at 505-06;
 
 In re American Property Corp.,
 
 44 B.R. 180, 183 (Bankr.M.D.Fla.1984);
 
 Corp. Deja Vu,
 
 34 B.R. at 848-50;
 
 Duggan v. Highland-First Ave. Corp.,
 
 25 B.R. 955, 961-62 (Bankr.C.D.Cal.1982);
 
 In re Zed, Inc.,
 
 20 B.R. 462, 463-64 (Bankr.N.D.Cal.1982);
 
 In re FJD, Inc.,
 
 24 B.R. 138, 140-41 (Bankr.D.Nev.1982);
 
 299 Jack-Hemp Assoc.,
 
 20 B.R. at 413;
 
 In re Alison Corp.,
 
 9 B.R. 827, 829-30 (Bankr.S.D.Cal.1981);
 
 Victory Constr.,
 
 9 B.R. at 565, 568;
 
 Lotus Inv.,
 
 16 B.R. at 594-95;
 
 In re Eden Assoc.,
 
 13 B.R. 578, 584-85 (Bankr.S.D.N.Y.1981);
 
 In re Dutch Flat Inv. Co.,
 
 6 B.R. 470, 471-72 (Bankr.N.D.Cal.1980).
 
 See also In re 2218 Bluebird Ltd. Partnership,
 
 41 B.R. 540, 542-44 (Bankr.S.D.Cal.1984) (combination “multiple filing” and "new debtor" syndromes).