## In re MILLER DEVELOPMENT CORPORATION OF LOUISIANA, Debtor.

### Bankruptcy No. 85–01497.

United States Bankruptcy Court, M.D. Louisiana.

March 6, 1987.

---

David L. Guerry, Baton Rouge, La., for FSLIC.

William E. Steffes, Baton Rouge, La., for debtor.

## REASONS FOR DECISION

WESLEY W. STEEN, Bankruptcy Judge.

### I. Jurisdiction of the Court

This is a proceeding arising under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

The Federal Savings and Loan Insurance Corporation (the "Receiver"), citing 12 U.S.C. § 1464(d)(6)(C), asserts that the bankruptcy court lacks jurisdiction over any claim against the Receiver. The Receiver then concludes that the alleged lack of jurisdiction translates into mandatory relief from the § 362 bankruptcy stay of creditor collection effort. The Receiver's analysis is as follows: First the Receiver points out that 12 U.S.C. § 1464 prohibits a court from issuing an injunction that would restrain or affect the Receiver in the performance of his duties. The simple answer to that proposition is that this Court has issued no injunction; Congress and the President did so by enacting 11 U.S.C. § 362(a). Apparently anticipating that conclusion, the Receiver points out that § 362(e) provides that the stay terminates thirty days after a creditor has filed a motion for relief from the stay unless the court "orders such stay continued in effect." Therefore, the Receiver concludes, the § 362 stay must terminate since an act of the court is necessary to continue the

stay and any such court action is prohibited by 12 U.S.C. § 1464.

I decline to accept such a facile interpretation of the two statutes. The inevitable concomitant of such analysis is that the § 362 stay applies to FDIC and FSLIC appointed Receivers, but no hearing is necessary on their motions for relief since the Court cannot rule against them. This analysis would undoubtedly be a surprise in the dozens of reported cases in which the FDIC or FSLIC requested relief from the stay and litigated entitlement to that relief.[1]

I agree that the authority cited by the Receiver is dispositive of the issue of whether I can rule on any claim against the Receiver: I can*not.* The issue for decision in the proceeding, however, is not the determination of a claim against the Receiver, but rather whether to grant relief from the automatic stay imposed by 11 U.S.C. § 362(d). I do not intend even to infer an opinion on the claim by Miller Development against the Receiver; I do intend to exercise exclusive jurisdiction over the St. Tammany property.[2] I do not intend to violate 12 U.S.C. § 1464(d)(6)(C) by granting an injunction that would "restrain ... the exercise of powers or functions of a ... receiver"; the injunction was granted by statute: 11 U.S.C. § 362(a). I do intend to perform my mandated duty to grant relief from the statutory injunction if, and only if, the conditions specified in the statute are met. Contrary to the interpretation of the Receiver, denial of relief under § 362(d) is not imposition of an injunction by the court; it is quite simply a determination that grounds specified by statute for relief from the stay do not exist and therefore a recognition that the statutory stay continues.

Even if the denial of relief from the stay were an injunction against FSLIC collection activity, it would be valid. The Receiver is simply overreaching when it asserts that no court order is valid to the extent that it diminishes the Receiver's ability to liquidate assets. If the Receiver were correct, then no cash collateral order[3] would be valid if the FSLIC were the creditor; no order relating to the right of setoff[4] would be valid if the FSLIC were a creditor; no order confirming a Chapter 11 plan of reorganization[5] would be valid if the FSLIC were a creditor; no Chapter 13 plan could be confirmed if the FSLIC were a creditor.[6] The Receiver has cited no authority that repeals the Bankruptcy Code when the FSLIC is a creditor.

This is not an issue of jurisdiction to grant a stay. This is an issue of whether to grant relief from a statutory stay. Any other analysis would mean that 12 U.S.C. § 1464 supercedes 11 U.S.C. § 362; the Receiver cites no authority for that proposition and I have not been able to find any.

## II.  Facts

The facts are either expressly stipulated[7] or else are uncontested.

Sun Belt Federal Bank, F.S.B. ("Sun Belt") made a loan to Miller Development Corporation of Louisiana ("Miller Development" or the "Debtor") and two other borrowers. The loan is secured by a mortgage on land in St. Tammany Parish, Louisiana; the land is owned in indivision[8] by Miller Development and the two other borrowers. Miller Development owns a 45% undivided interest in the land and is liable for 45% of the debt arising from the loan. The total amount of that debt is now in excess of $10,260,633.41 and continues to increase at the rate of $1,354.17 each day. No payments on the loan have been made since February 28, 1985. Sun Belt began fore-

---

1. A cursory Westlaw search of the bankruptcy data base produces more than five dozen reported cases in the past five years that determine contested motions for relief from the stay in which the FDIC or FSLIC was the movant.

2. 28 U.S.C. § 1334(d).

3. § 363(c)(2)(B).

4. *See, e.g.* §§ 362, 363, 553.

5. *See* § 1141(a) and (b).

6. *See* § 1327(a) and (c).

7. Pleading # 102.

8. A Louisiana term for a tenancy in common; in Latin: *Indivisum.*

closure proceedings on October 25, 1985. The Debtor filed its bankruptcy case on December 17, 1985.

On December 23, 1985, Miller Development and other plaintiffs filed a complaint against Sun Belt in the United States District Court for the Middle District of Louisiana. The complaint alleged that in making the loan to Miller Development Sun Belt violated the provisions of 12 U.S.C. § 1464 by tying a requested $350,000 loan to a requirement that Miller Development purchase unrelated Lafayette Parish real estate from Sun Belt for $5.8 million. The complaint also alleges that these transactions were accomplished and that in connection with the transactions Sun Belt provided Miller Development with an appraisal showing an approximate value of $5.8 million for the Lafayette property; the complaint alleges that the Lafayette property was worth much less and was later valued in foreclosure proceedings at $1.5 million. Finally, the complaint alleges that, in addition to the loss resulting from the Lafayette property, the conduct of Sun Belt resulted in an additional $2 million interest liability on the St. Tammany property.

On January 27, 1986, Sun Belt answered the complaint. The answer asserts: failure to state a claim on which relief can be granted, failure to join a party needed for a just adjudication, absence of damages, the right of offset (alleging that the value, and therefore Miller Development's equity, in the St. Tammany property has increased), assumption of the risk, mitigation of loss by "failure to get rid of the property when deals were proposed", "no cause of action", and a denial that the transactions were tied or that the plaintiff was damaged.

On May 1, 1986, the Federal Savings and Loan Insurance Corporation ("the Receiver") was appointed as Receiver of Sun Belt by resolution of the Federal Home Loan Bank Board. The Receiver is an instrumentality of the United States under 12 U.S.C. § 1725(c). The Receiver took possession of Sun Belt on May 2, 1986, and succeeded to all of the rights, powers, and privileges of the board of directors and officers of Sun Belt pursuant to 12 U.S.C.

§ 1729(b)(1) and § 1729(d) and 12 C.F.R. § 547 and § 549.

On June 20, 1986, Chief Judge John Parker dismissed Miller Development's suit. The Chief Judge concluded that the preemptive effect of 12 U.S.C. § 1464(d)(6)(C) required that Miller Development's claim against Sun Belt be submitted to the Receiver for an administrative determination and that judicial consideration of the claim was precluded until the administrative action had been completed.

Miller Development timely filed its claim against Sun Belt in the Receiver's administrative proceeding; the claim was filed on the claim form prescribed by the Receiver with the claims coordinator for the Receiver on December 17, 1986.

Due to the complexity of the allegations made by Miller Development in its proof of claim, it may be many months before investigation of Miller Development's claim by the Receiver is completed and an administrative determination is made by the Receiver.

Even if it is determined that Miller Development's claim is valid, it is possible that the distribution to Miller Development will not be in the full amount of Miller Development's claim.

To determine Miller Development's claim, the Receiver will consider a number of issues including the recognizability of treble damage claims in the receivership claims process and whether Miller Development is entitled to receive a priority because of an offset.

The St. Tammany property is unimproved land producing no income. It is virtually the only remaining asset of Miller Development. There is no "equity cushion" in the St. Tammany property. The evidence indicates that the value of the property might decline in the future. Apparently that result would obtain regardless of who owned the property. The amount of decline, if any, is speculative and apparently not quantifiable. There was no evidence concerning the likely length of time during which the value of the property would decline and there was no evidence concerning the possibilities for recovery of

value. The land is not physically deteriorating or being depleted; if it is decreasing in value at all, the decrease results from the general Louisiana economic malaise.

III. The Pleadings in This Proceeding

On November 24, 1986, the Receiver filed a motion for relief from the stay effected by § 362 of the Bankruptcy Code; that statute prohibits foreclosure of liens against property of the estate.[9] The motion alleges the lack of adequate protection and it also alleges that there is no equity and that the property is not necessary to an effective reorganization. The motion asks for alternative relief: (i) relief from the stay to allow "this particular controversy [to be] resolved promptly in the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana"; (ii) adequate protection consisting of immediate cure of payments in arrears, an order that the Debtor make payments of principal and interest during the pendency of the case, maintenance of insurance on the property, and payments to compensate the Receiver for damages caused by the pendency of the case.

While the first prayer sounds at least in part like a request for abstention, the Receiver's contention is that the only dispute that can be resolved in state court is the sale of the property and payment of the proceeds to the Receiver for application to the note; the Receiver contends that all other issues involving claims between these parties must be resolved by the Receiver's administrative process. Therefore, I take this prayer to be a request for relief from the stay, pure and simple, not a request for abstention.

The second prayer, for adequate protection, cannot be granted as requested for two reasons. First, the Receiver requested insurance protection. The property is raw land; there has been no evidence or argument at hearing concerning insurance and

certainly no proof to indicate the need for property and casualty insurance (or any other insurance) to protect the Receiver's interest in the property. Second, the Receiver requested cash payments. Payments to this secured creditor, whether to cure deficiency or to compensate for damages, appears precluded by the panel opinion in *Timbers of Inwood Forest*.[10] Although the *en banc* majority opinion (and more emphatically the concurring opinion of Chief Judge Clark) hints that periodic payments might be appropriate in some circumstances, the panel opinion, explicitly reinstated by the majority, emphatically rejects such payments to the extent that the payments relate to post-petition interest or delay damages. It is not yet clear whether and when such payments are appropriate, but by explicitly adopting the panel opinion, it would appear that the payments are not appropriate to protect the interests asserted here. For these reasons, the prayer for insurance and periodic payments as adequate protection cannot be granted.

IV. Relief From the Stay

The remaining question is whether the Court must grant relief from the stay. Section 362(d) requires the Court to terminate, to annul, to modify, or to condition the automatic stay: (i) for cause: § 362(d)(1), or (ii) if there is no equity in the property and if the property is not necessary to an effective reorganization: § 362(d)(2). The "cause" alleged in this dispute is the contention that there is no equity in the property and that delay in foreclosure is costly to the Receiver.[11]

A. *Findings of Fact and Conclusions of Law Under § 362(d)(1)*

■ The court is required to grant relief from the stay "for cause, including the lack of adequate protection of an interest in

---

9. Final hearing on this motion was held on February 11, 1987. The order determining the issue has been issued within thirty days of the final hearing as required by the statute. The stay never expired under the authority of § 362(e) because the Receiver consented to extension of the stay until I decided the issue; the

request for the extension was initiated by counsel for the Receiver and was granted for the convenience of counsel for the Receiver.

10. 793 F.2d 1380 (5th Cir., 1986).

11. Paragraph 15 of the Motion, pleading 91.

property." As noted above, *Timbers*[12] teaches that one looks only to the value of the collateral and not to the delay cost resulting from § 362(a). As noted in the findings of fact, there is a possibility of decline in value of the property which decline is related to the poor Louisiana economy.

■ The Debtor offered, as adequate protection, to assist the Receiver by selling the property and having the Debtor's portion of the sale proceeds placed in escrow, subject to the Receiver's lien, until final determination *by the Receiver* (and applicable appeals) of the Debtor's claim and of the Debtor's right, if any, to offset.

I conclude that this offer, if effected, would constitute adequate protection of the Receiver's interest in the property. This offer would also be similar to the bankruptcy provision in which property subject to a lien can be sold free and clear of the lien.[13]

I further conclude that the proposed "adequate protection" would give the Receiver more protection than relief from the stay. The Receiver contends that its lack of adequate protection stems from the potential of decrease in market value of the property over time; the Receiver's pleadings pray for relief from the stay so that it can foreclose and sell the property. Louisiana law would require advertising, Sheriff's sale, and commissions; the Receiver could "bid in" the property and then sell it in the open market. Relief from the stay, therefore, would provide protection from loss in market value only to the extent that the loss might occur subsequent to sale of the property in the real estate market after foreclosure. The Debtor's proposed adequate protection would avoid foreclosure delays and would accelerate the sale, thereby increasing the protection against decline in market value.

■ The Receiver has refused the adequate protection offered. I further conclude that when adequate protection is offered and refused, then lack of that adequate protection is not "cause" for relief from the stay under § 362(d)(1).

## B. Findings of Fact and Conclusions of Law Under § 362(d)(2)

■ The first test of § 362(d)(2) is met: there is no equity in the property.

The second requirement of § 362(d)(2) is that the property be not necessary to an effective reorganization. *Timbers* requires a twofold determination to conclude that property is necessary for an effective reorganization. First, the Court must conclude that the property is not surplus property, *e.g.* that in the Debtor's scheme of reorganization the property will be needed. Second, the Court must find that the Debtor's plan has some, as yet unspecific, quantum of probability for confirmation.

With respect to the first issue, there is no dispute. The St. Tammany property is virtually the only property of the estate, except for its claim against the Receiver. The stipulation of facts[14] indicates that the parties are not able to project the value of the Debtor's claim against the Receiver if this property is lost to foreclosure and the right to offset (if any) is lost; as the Receiver argues, only the Receiver has jurisdiction to determine whether that right of offset exists. Therefore while I reach no conclusion about the validity of the Debtor's claim to the right of offset, I conclude that the loss of the right of offset could only detrimentally affect this case and therefore I conclude that the property is necessary for an effective reorganization.

The second determination is not so easy. The feasibility of the Debtor's plan rests in a determination of the Debtor's claim by

---

**12.** Panel opinion as explicitly adopted by the *en banc* majority. 808 F.2d 363 (5th Cir., 1987).

**13.** 11 U.S.C. § 363(f)(4) allows a trustee to sell property free and clear of a lien if the lien is in *bona fide* dispute. This opinion does not interpret § 363(f)(4) nor does this opinion judge the *bona fides* of the dispute. It merely notes the similarity of the offer of adequate protection to

the statutory approach. I further note that the preferred adequate protection advances the Receiver's duty to liquidate assets while the Receiver is determining the amount, validity, and priority of claims against the proceeds of the liquidation.

**14.** # 5 filed February 10, 1987.

the Receiver. The Receiver correctly asserts that I cannot evaluate even the facial merits of that claim.

The Debtor's plan calls for a *determination by the Receiver*,[15] of the Debtor's claim against the Receiver and then, *an offset if allowed by the Receiver*,[16] of that claim against the Receiver. *Timbers* and *Little Creek*[17] indicate that the debtor need not present overwhelming evidence of probable success in reorganization if it has been diligent in pursuit of reorganization, if the failure to achieve plan confirmation is not the debtor's fault, and if the debtor is in apparent good faith. In applying such a diminished test to this question, I conclude that this property is necessary to an effective reorganization. Under the unique circumstances of this case, such a conclusion is reinforced by the Receiver's exclusive authority to evaluate the merits of the Debtor's claim.

### V. Summary

The bankruptcy court has exclusive jurisdiction over the property of the estate. The Debtor has offered adequate protection which has been refused; no other sufficient "cause" is alleged as grounds for relief from the stay; therefore, the lack of adequate protection is not cause for relief from the stay under § 362(d)(1). There is no equity in the property, but it is necessary for an effective reorganization; therefore relief from the stay cannot be granted under § 362(d)(2).

Therefore, a separate order will be entered denying the relief sought.

### VI. Other Issues

Counsel for the Receiver provided a comprehensive memorandum of authorities; unfortunately it did not cite any authority analyzing the relationship of 11 U.S.C. § 362 and 12 U.S.C. § 1464 or analyzing the relationship of § 362 and the *D'Oench, Duhme* doctrine. Perhaps there is no such authority. While I do not think the Receiv-

er's arguments are correct, I do think that I should explain *why* I reach this conclusion.

### A. 12 U.S.C. § 1464

The Receiver cites 12 U.S.C. § 1464 and *Hudspeth*[18] for the proposition that no court can restrain the Receiver or affect the exercise of its powers. It is unlikely that the Receiver would want to accept that language literally: The statute (11 U.S.C. § 362(a)), not this Court, restrains the Receiver's foreclosure; granting relief from the stay would "affect" the Receiver's powers by giving it authority to do something that by statute it could not otherwise do. If taken literally the Receiver's argument would mean that a court cannot grant the Receiver relief from the stay because such an order would be to affect (albeit to increase) the Receiver's powers as established by statute. Presumably the Receiver contends only that its ability to collect assets cannot be reduced.

*Hudspeth* dealt with a claim by the former president of a savings and loan association against his former employer for deferred compensation. Mr. Hudspeth was not a debtor in bankruptcy; § 362 did not apply. *Chupik*[19] dealt with a determination of materialmen's liens in a state court foreclosure; no bankruptcy was involved; § 362 did not apply.

These cases, and unreported district court opinions attached to the Receiver's memorandum, *do* stand for the proposition that this Court cannot consider the merits of the Debtor's claim against the Receiver. The cases are solid authority for that proposition, and I accept it.

But a bankruptcy court's disability by virtue of 12 U.S.C. § 1464 is not grounds under § 362 for relief from the stay. If it were, then relief from the stay for the FSLIC and FDIC would be automatic since

---

15. Subject, of course, to applicable appeals.

16. Subject, of course, to applicable appeals.

17. 779 F.2d 1068 (5th Cir., 1986).

18. *North Mississippi Savings & Loan Association v. Hudspeth*, 756 F.2d 1096 (5th Cir., 1985) *cert.*

*den.,* — U.S. —, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).

19. *Chupik Corp. v. FSLIC,* 790 F.2d 1269 (5th Cir., 1986).

to deny relief from the stay would be to diminish the Receiver's ability to collect assets. *Hudspeth* holds that I cannot evaluate the claim against the receiver; it does not deal with the interrelationship of 11 U.S.C. § 362 and 12 U.S.C. § 1464.

### B. Consideration by the Bankruptcy Court of the Counterclaim

First the Receiver argues, as indicated above, that I cannot evaluate the claim by the Debtor against the Receiver.[20] Then from pages 9 to 18 the memorandum asserts that the Debtor's claim is invalid. I agree with the contention that I cannot determine the Debtor's claim against the Receiver: *Hudspeth;* but if I have no jurisdiction over the Debtor's claim against the Receiver, then I cannot rule in the Receiver's favor that the Debtor's claim is invalid. Therefore I will go no further with the Receiver's contention that the Debtor's claim is facially invalid. The claim, including the demand for offset, has been submitted to the Receiver; while, judging from its memorandum, the Receiver may have already reached a conclusion on that issue, a decision has not yet been rendered and jurisdiction still lies with the Receiver *and its appellate process* on that issue.[21]

### C. The Real Dispute

Through this labyrinth of legal argument runs a very simple dispute. The Debtor claims that the Receiver owes the Debtor roughly three times as much as the Debtor owes the Receiver; in addition, the Debtor claims that it has a right of offset. The Receiver claims that it has virtually exclusive jurisdiction to determine that dispute; but the Receiver has not issued its decision. The Debtor concedes that the Receiver has virtually exclusive authority to decide the dispute. The Debtor's sole argument is that it should have a decision and appellate review of its claim and its right to set off

before the issue is rendered moot by foreclosure.

Hovering in the wings is an issue that the Receiver has not addressed in its memorandum but will necessarily face if the claim of offset does not become moot: is a Debtor in Possession in a Chapter 11 case, like a federal receiver under the *D'Oench, Duhme* doctrine, cleansed of its own misconduct on account of public policy favoring orderly and expeditious liquidation for the benefit of innocent third parties such as depositors and non-affiliated unsecured creditors? Both the bankruptcy law and the *D'Oench, Duhme* doctrine share these objectives.

As the Receiver points out, this Court does not have authority to decide any of these issues; only the Receiver itself has that initial authority. The Receiver can make the decision and begin the appellate process whenever it wishes. For now, the Receiver has, quite simply, failed to prove grounds for relief from the stay.

---

20. "This Court Does Not Have Subject Matter Jurisdiction To Consider Even the Facial Merits of Any Claim Against the Receiver" (capitals in original), pages 18–21 of the Receiver's memorandum. See also pages 5–9 "As A Matter of Bankruptcy Law, This Court Should Not Consid-

er The Existence Of A Counterclaim In Ruling On A Motion To Modify The Automatic Stay."

21. In short, even though I believe that the Receiver is probably correct concerning the invalidity of the demand for offset, since I have no jurisdiction, I cannot reach that issue.