## In re LAKESIDE I. CORPORATION, Debtor.

### Bankruptcy No. 88–5404–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 31, 1989.

Charles Tatelbaum, Tampa, Fla., for debtor.

W. Keith Fendrick, Tampa, Fla., for movant.

## ORDER GRANTING MOTION FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 case and the matter under consideration is a Motion for Relief from Stay filed by Citibank (Florida) N.A., f/k/a Caribank. The original Motion sought relief from the automatic stay based on an allegation that Citibank is not protected "against the erosion of its collateral position" and "not otherwise adequately protected". It is unclear whether or not this ground for relief is based on

§ 362(d)(1) or the relief sought is for "cause". The original Motion also sought relief on the basis there is no equity in the subject property and is of "inconsequential value" to the estate of Lakeside I. Corporation (Debtor). It did not allege that the property is not needed for an effective reorganization.

On August 7, Citibank filed an Amended Motion for Relief from Stay. In the Amended Motion, it asserted that the Debtor has no equity in the subject property and the same is not needed for reorganization. The facts as established at the evidentiary hearing which are relevant to the issues raised by the Motion and by the Response are as follows.

On September 20, 1985, Edward C. Tietig (Tietig), who is the president and the principal stockholder of the Debtor, executed and delivered to Caribank, N.A., a banking association, a promissory note in the stated principal amount of $1,900,000.00 (Citibank's Exhibit #1). To secure the payment of this obligation, Tietig also executed, on behalf of the Debtor and individually, together with an entity known as Emerald Lake Development and Construction Company (Emerald Lake) a mortgage and a security agreement dated September 20, 1985 (Citibank's Exhibit #2). It should be noted in this connection that Tietig appears to be the principal of Emerald Lake and, most likely, is the major if not the sole owner of all outstanding shares of Emerald Lake. The mortgage encumbering the real property involved in this controversy also encumbers a tract of land located in Osceola County and owned by Emerald Lake. It is without dispute that the mortgage was properly recorded in the Official Record Book in the Public Records of Osceola and Polk County, Florida, respectively. Although the mortgage and promissory note was executed by Tietig in favor of Caribank, the Motion under consideration was filed by Citibank. At the time of the evidentiary hearing, counsel for Citibank was unable to furnish any proof to indicate that Citibank has any interest in a note and mortgage involved in the matter under consideration.

At the conclusion of the hearing, counsel requested to be given an opportunity to furnish additional documents to show that Citibank has, in fact, a cognizable interest in the note and mortgage in question, therefore, it has standing to move and seek the relief from the automatic stay. The request of Citibank was granted and counsel for Citibank filed with this Court a certified copy of an order entered by the Circuit Court in and for the Seventeenth Judicial Circuit of Broward County, Florida, confirming the appointment of the Federal Deposit Insurance Corporation (FDIC) as liquidators for all assets of Caribank (Citibank's Exhibit # 4); certified copy of an order entered by the same court approving a sale of all the remaining assets of Caribank to Citibank described in the order to be the "assuming" bank (Citibank's Exhibit # 5). It appears from the Total Asset Purchase and Assumption Agreement 1.10 (Citibank's Exhibit # 6), that Citibank purchased, inter alia, all loans on the books of Caribank as of the date of closing with the right of the assuming bank, in this case Citibank, to resell to the FDIC, loans made to insiders. In addition, Citibank also had the right to resell to the FDIC at its option within thirty (30) days after the bank's closing, any and all loans which were booked by Caribank after November 7, 1988, for which no financial information was made available to the assuming bank, that is the Citibank. (Paragraph 3.2 of the Asset Purchase and Assumption Agreement). From documentation submitted by Citibank, it is impossible to tell, albeit it is fair to infer, that the loan in question was part of the assets acquired by Citibank from FDIC as part of the transaction described.

The property involved in this controversy was acquired by Debtor in 1971. It consists of twenty-two (22) acres of multi-family zoned land located on the northwest corner of Lake Parker Avenue and Edgewater Beach Drive in Lakeland, Florida. The Debtor has been attempting to market the 16 acres since 1974 by advertisement, by posting signs and by listing for sale the property with realtors, so far without any success. The property is also encumbered by a second mortgage held by the son of Tietig securing the principal indebtedness of $300,000.00. In addition, the ad valorem real estate taxes are past due for three years in the approximate amount of $27,-000.00. The Debtor also owns an adjoining 6½ acre tract which is encumbered by a mortgage held by Westfield Financial Corporation (Westfield) but which is not covered by the mortgage lien which Citibank seeks to enforce.

According to the schedules filed by the Debtor, this case basically involves a two-party dispute since the only unsecured creditor scheduled by the Debtor is the principal of the Debtor which indebtedness is based on alleged cash advances made by Tietig during the years of 1987 and 1988 in the amount of $5,010.34.

According to the expert presented by Citibank, the property has a current value, as is, $870,000 (Citibank's Exhibit # 3) against the combined indebtedness of $1,109,000, plus accrued interest and by the second mortgage securing an indebtedness of $300,000. In opposition, the Debtor presented Tietig, who is an attorney but testified as an expert on real estate based on the fact that he also holds a real estate broker's license although he is not a member of any recognized appraisers society. According to his testimony, the highest and best use of the property is either to build single family homes and sell the lots at retail which, according to Tietig, would produce $3.7 million gross and, after deductions for the cost of development, $2.9 million. In the alternative, Tietig claims that building a highrise life care facility might place the 16 acres at a value of $4,400,000. Of course, the difficulty with the values stated by Tietig is evident because his opinion is based not on existing facts, on the present condition of the property as it stands today, but on future hopes and expectations wholly unsupported by this record. There is nothing presented in support of the Debtor's expectations and this record is devoid of any evidence that this Debtor is able to obtain the financing necessary to develop the subject property either as a single family housing develop-

ment or by constructing the highrise life care center. In light of the past history of this subject property, it is not really an overstatement to characterize this reorganization attempt as something which is based on "terminal euphoria" of the Debtor, a characterization used by Judge Jones in the case of *In the Matter of Little Creek Development Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068 (5th Cir.1986).

Lastly, this Court would be amiss not to note that while this Chapter 11 was filed in September of 1988, the Debtor is yet to file a disclosure statement or plan of reorganization and, of course, has not made any payment whatsoever on the first mortgage. As noted earlier, the Debtor has not paid any of the real estate taxes for the past three years, which is currently outstanding in excess of $27,000, representing an additional encumbrance on the subject property, which, of course, represents an encumbrance which is superior in rank to the mortgage lien held by either Caribank or its claimed successor in interest, Citibank.

■ It is the Debtor's contention that Citibank has no standing to seek relief from the automatic stay in that the mortgage and the note in question is still held, per record, in the name of Caribank and there is no assignment of the mortgage on record which is required by Fla.Stat. § 701.02 as a condition to the enforceability of a mortgage against subsequent creditors or purchasers. As noted earlier, the documentation submitted by Citibank to establish its interest in the mortgage and note in question is non-specific but merely indicates that Citibank acquired all the assets of Caribank from the FDIC who was placed in charge to liquidate the assets of Caribank. Notwithstanding lack of specificity, this Court is satisfied that it is fair to assume that the Total Asset Purchase Agreement included the acquisition by Citibank of this particular note and mortgage. The procedure to obtain relief from the automatic stay was never designed to adjudicate substantive rights, and the Debtor certainly could assert this defense in a state foreclosure action if so deemed to be advised. This Court is satisfied that the documentation furnished by Citibank is sufficient to establish Citibank's standing to seek relief from the automatic stay.

■ This leaves for consideration the ultimate question which is Citibank's Motion to be permitted to proceed to enforce, in state court, the mortgage lien encumbering the subject property. Based on this record, this Court is satisfied that Citibank did establish with the requisite degree of proof, that the Debtor lacks equity in the subject property and the Debtor did not present persuasive believable evidence to show that the subject property is needed for an *effective* (emphasis supplied) reorganization. In addition, while it is not pled, this Court is also satisfied that there is cause to lift the automatic stay. *See In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from Automatic Stay be, and the same is hereby, granted and Citibank is hereby permitted to proceed in a nonbankruptcy forum to enforce the mortgage lien it claims to hold with the proviso that it shall not seek or obtain an in personam judgment against the Debtor.

DONE AND ORDERED.