In re HUMBLE PLACE JOINT VENTURE, a Texas General Partnership, Debtor.

HUMBLE PLACE JOINT VENTURE and MacNaughton Alonso, Leufven & Ceronsky, Appellants,

v.

Charles E. FORY, et al., Appellees.

No. 91–2074

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 29, 1991.

Dorrance W. Monteith, Monteith & Monteith, Houston, Tex., for Fory, Hubert H. & Vestal.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Two questions are posed in this bankruptcy case: whether the court properly dismissed from Chapter 11 protection a one-asset real estate "development" whose manager admitted his principal responsibility was "mowing the grass and waiting for the market to turn;" and whether the debtor's counsel must disgorge their $40,000 retainer because of an actual conflict between their representation of the debtor and its investors-guarantors of the partnership debt. We affirm the bankruptcy court's orders of dismissal and disgorgement.

## I.

## BACKGROUND

Humble Place was one of the many would-be commercial developments that sprang from a gleam in a developer's eye during Houston's frenzied real estate market of 1980. Starting as a 30–acre tract of raw land, purchased by Humble Place Joint Venture from the Vestal and Fory families, the development never grew past the stage of subdividing the land into 80 parcels and adding streets, curbs and basic utilities. Until 1984, the sales of some lots generated cash from promissory notes. From and after 1985, through the filing of bankruptcy in 1988, Houston's real estate crash took its toll: one lot was sold in each of 1987 and 1988, but none in 1985 or 1986. Worse yet, Humble Place was forced to foreclose on $2.7 million of the $7 million in tracts previously sold, devastating the project's cash flow.

The general partnership[1] sought relief under Chapter 11 of the Bankruptcy Code

Yocel Alonso, Alonso, Cersonsky, Leufven & Suarez, Houston, Tex., for appellants.

1. Humble Place Joint Venture is a real estate general partnership composed of two partners.

The first is a partnership of Messrs. C.L. Conner, Donald E. Warfield, and Richard R. Lee.

in September, 1988 to avoid imminent foreclosure by Post Oak Bank, its principal secured creditor. At the date of bankruptcy, Post Oak Bank was owed approximately $2.2 million, secured by liens on various tracts and notes receivable from some of the sales. Post Oak Bank's lien was at least fully secured as of the hearing on dismissal. Haplessly, Post Oak Bank lent money to the project in late 1985, and more haplessly, the original landowners, Vestal/Fory, had exchanged some of their liens on notes and tracts for other notes and personal guarantees by the individual investors of Humble Place so that Post Oak Bank could step in. Vestal/Fory were owed approximately $800,000 on the date of bankruptcy and were undersecured by their collateral apart from guarantees. There were two unsecured, non-insider creditors of Humble Place, whose total claims were less than $7,000, and unpaid 1987 real estate taxes.[2] Humble Place had no employees of its own, for its books were kept by National Land Company, the managing general partner. The only "development" activities still conducted on behalf of Humble Place included the marketing of lots, accounting for note payments, approving construction plans, should construction occur, and property maintenance.

Unlike some one-asset debtors, Humble Place had $110,000 in the bank just before it paid counsel's Chapter 11 retainer. This money included payments from notes collaterally assigned to Vestal/Fory and paid off before the Chapter 11 filing. Humble Place also had some unencumbered assets, including several lots worth an estimated $600,000 to $700,000, some unencumbered promissory notes, monthly maintenance fees and furniture, fixtures and equipment.

Hoping to emerge quickly and painlessly from Chapter 11, Humble Place filed a proposed reorganization plan shortly after it commenced the bankruptcy. The thrust of the plan was simple: each secured creditor's claim would be satisfied in full by an orderly liquidation, whereby Humble Place would abandon property and notes to Post Oak Bank and Vestal/Fory, while the individuals' guarantees would be released. Humble Place stated its intention to pay all creditors in full. The bankruptcy proceedings were not harmonious, however, because the secured creditors had already negotiated vainly with the debtor for several months, Vestal/Fory continued pursuing its state court lawsuits against the guarantors, and Vestal/Fory were upset by the diversion of its note payments just before bankruptcy.

When Post Oak Bank moved to dismiss the case under 11 U.S.C. § 1112, Vestal/Fory joined in. The court, after hearing exhaustive testimony, agreed with the creditors and dismissed. After a separate hearing, the court ruled that counsel for Humble Place had labored under an actual conflict of interest proscribed by 11 U.S.C. § 327(a), requiring that the attorneys' retainers be disgorged. Humble Place has appealed both rulings, first, unsuccessfully, to the district court, and now to this court.[3]

## II.

### THE DISMISSAL

■ We review the bankruptcy court's decision to dismiss for abuse of discretion, reversing its findings of fact only if they were clearly erroneous. The court's finding that Humble Place's Chapter 11 petition was not filed "in good faith" is one of fact. *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re: Little Creek),* 779 F.2d 1068 (5th Cir.1986). The Bankruptcy Code provision that a Chapter 11 case may be dismissed "for cause" has been interpreted to include the

---

The second partner is National Land Co., a business owned and operated by Conner, who has been engaged in real estate development since 1972.

**2.** There were also unsecured claims owed to "insider" creditors including Conner and two companies owned or controlled by him.

**3.** Post Oak Bank and Vestal/Fory both participated in the appeal before the district court. Post Oak Bank was, however, dismissed by agreement before the district court affirmed the bankruptcy court's decisions.

lack of good faith in its filing. 11 U.S.C. § 1112(b).[4] *Little Creek*, 779 F.2d at 1072.

Humble Place objects to the dismissal of its Chapter 11 case for three reasons: the bankruptcy court did not properly apply this court's test from *Little Creek* in reaching its decision; the court's findings of fact based on *Little Creek* were clearly erroneous; and there is no statutory or constitutional authority for dismissal of a Chapter 11 case for lack of good faith. Taken in reverse order, these arguments show fatal flaws.

First, it does Humble Place no good to challenge the status of *Little Creek* as governing law in this circuit. Each panel is bound by our prior precedent until and unless en banc review occurs, which Humble Place has not yet sought here. *Umphlet v. Connick*, 815 F.2d 1061, 1063 (5th Cir.1987). Because *Little Creek* explicitly treated the question of good faith dismissals under § 1112, the case settles any statutory or constitutional question about that procedure. *See also In re Natural Land Corp.*, 825 F.2d 296, 297 (11th Cir. 1987); *Matter of Winshall's Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985).

Second, the objections that Humble Place levies against specific findings of fact by the bankruptcy court, other than the ultimate finding on lack of good faith, are quibbles. The joint venture contends, for instance, that contrary to the bankruptcy court's finding, it *did* have employees. While employees of National Land Company received monthly checks from the joint venture to the extent that they performed any work for it, however, the testimony also showed that they were similarly paid by each of Conner's several real estate ventures and were not dependent on Humble Place for their livelihood. Insofar as Humble Place suggests that the bankrupt-

cy court erred in intimating a lack of *subjective* good faith, this is a straw man: the court drew no such conclusion, and there is no suggestion of malfeasance by the partnerships. Humble Place also quarrels with the bankruptcy court's description of its holding as "raw land," because it allegedly spent $1 million to develop the tracts with paving and utilities. The bankruptcy court's description serves adequately, however, to distinguish the state of Humble Place from a debtor which owned an *operating* single asset such as a hotel or restaurant. The "business" of Humble Place, as Conner acknowledged, had for several years consisted of "mowing the grass and waiting for market conditions to turn."

More significantly, Humble Place argues that the bankruptcy court misapplied the *Little Creek* criteria. The joint venture quotes *Little Creek* as relying on a bankruptcy court's "on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities," 779 F.2d at 1071, but it asserts that the court did not properly analyze the latter two circumstances. According to Humble Place, its motive was to protect its investors' equity in the project while offering the creditors a full pay-off. Humble Place says it was not motivated by a desire to delay creditors; further, it says, the bankruptcy court simply ignored the impact of "local financial realities" on the type of plan it could propose.

We disagree with Humble Place's characterization of the bankruptcy court decision and with its contention that the bankruptcy court misapplied *Little Creek*. The bankruptcy court carefully went through the factors listed in *Little Creek* as indicia of a "bad faith" filing, 779 F.2d at 1072–73, and found most of them applicable to this case.

---

**4.** 11 U.S.C. § 1112(b) provides in pertinent part:

The court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors; ....

The parties did not brief or argue the possible applicability of other provisions of § 1112(b) such as the debtor's "inability to effectuate a plan" as grounds for dismissal. Although such an additional issue might well have found favor with the bankruptcy court here, we do not reach it.

We need not recount all of the parallels with the *Little Creek* factors, for they are apparent from the previous factual recitation. Two significant factors differentiate this case from *Little Creek,* but not in any way helpful to Humble Place. First, the bankruptcy court found that the principal purpose of the Chapter 11 filing was to "cleanse the partners of their liability." Of course, the partners are not the Chapter 11 debtor, and their fate is irrelevant to the propriety of Humble Place's filing. The court was correct to determine that this impermissible purpose cast doubt on the venture's objective good faith. Second, the partners' alleged interest in maintaining their equity was pierced by the court's logic. There would be equity remaining to the partnership *even if* Post Oak Bank and Vestal/Fory both foreclosed and all the unsecured, non-insider debts were paid. The partners feared, however, that they could lose additional "equity" in the bank's specific collateral, while they would individually be called to account on the Vestal/Fory guarantees because of its undersecured position. These disputes were fully capable of resolution in state court without the delay and expense caused by bankruptcy. In a case with features similar to these, the Eleventh Circuit affirmed a dismissal. *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393 (11th Cir.1988).

Humble Place finally contends that if *Little Creek* is applied without regard to consideration of overriding motives and local economic realities, "the result is economic apartheid against the real estate industry," because many of the factors adduced in *Little Creek* are typical of real estate development ventures. While the latter observation may be true, the former calumny is surely overblown. There are several instances in which even one-asset real estate ventures would invoke Chapter 11 in good faith: the asset may be an operating business, like a ranch or a hotel; the development might be nearing the end of construction whose completion would markedly enhance the asset's value; and

even a venture including undeveloped property might file to protect true owner equity when market conditions suggest the remedy of a debt restructuring, as opposed to simple liquidation, and the likelihood of prompt resale. *See Cohn,* Good Faith and the Single–Asset Debtor, 62 Am.Bankr.L.J. 131 (1988).

■ This case follows none of those models. Humble Place's developers long ago misinterpreted market conditions in the Houston area. The record shows virtually no sales of lots for four years before bankruptcy, supporting the bankruptcy court's prediction that there would be no prompt turnaround in Houston. There is no "business" to reorganize nor unsecured creditors who need protection; enough cash was on hand at the date of bankruptcy to pay the non-insider unsecured creditors. The investors' goal was relief from their personal guarantees to Vestal/Fory [5] and preservation of a speculative equity in the property that was subject to Post Oak Bank's lien. There was no question that, even after paying Vestal/Fory, the investors could retain some unencumbered property. Personal guarantees of non-debtors are not ordinarily, and are certainly not here, a legitimate concern of Chapter 11.[6] Further, the preservation of the investors' equity must be evaluated in the harsh light of the ongoing costs of bankruptcy administration and taxes, which deplete such equity at a steady pace. The court implicitly found that the risk to secured creditors of a continuing Chapter 11 case outweighed the benefit to Humble Place, particularly because the partnership's estimate of "equity" in the property subject to Post Oak Bank's lien depended upon a five-year sales period to achieve "fair market value". The record does not give us cause to disagree with the court's decision.

### III.

### DISGORGEMENT OF FEES

■ In order to receive compensation as counsel for the debtor, an attorney must be

---

5. The record suggests that Warfield and Lee had never contributed any cash to the partnership; both are successful businessmen.

6. *See Matter of Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1351 (5th Cir.), *on reh.,* 889 F.2d 663 (5th Cir.1989).

disinterested and may hold no interest adverse to the bankruptcy estate. 11 U.S.C. § 327(a). Section 101 of the Code defines "a disinterested person" as one who "does not have any interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in the debtor ... or for any other reason." 11 U.S.C. § 101(13). Further, § 328(c) allows the court to deny compensation to a professional in any case where "such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate." *See Pierson & Gaylen v. Creel and Atwood (In re: Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir.1986)).

Applying the statutory standards, the bankruptcy court found an actual conflict of interest in the representation by debtors' counsel both of Conner and of the debtor. The court found that the proposed plan was clearly formed to benefit the partners rather than the creditors and that it would have been very hard for debtor's counsel, in light of this purpose, to decide how to structure the plan. The court reached this conclusion after hearings not only on the motion to disqualify counsel but on several other hotly contested matters in the bankruptcy case.

The principal objection of Humble Place to this finding is that its attorneys' former representation of Conner could not create an actual conflict with its present representation of the joint venture. We disagree. This is in fact a classic case for disqualification of a debtor's counsel. Although the Code does not prevent counsel from representing a debtor solely because counsel may represent a creditor of the debtor, 11 U.S.C. § 327(c), here, the counsel's loyalty to reorganizing the debtor's estate would be tested at every turn by the very real, continuing interest of his client Conner in avoiding exposure on a guarantee. The bankruptcy court believed that the conflict was evidenced by a proposed plan that actually, and gratuitously, relieved the principals of their guaranty obligations. The finding of an actual conflict is one of fact, and the record does not suggest that the

court's conclusion was clearly erroneous. We emphasize, however, that such findings are fact-bound, and we venture no pronouncements on the scope of § 327 beyond the facts of this case.

It follows that the order requiring the counsel to disgorge its retainer was authorized. Even though the case was dismissed, the $40,000 returned to Humble Place would be available to satisfy claims such as those of taxing authorities, Vestal/Fory or Conner.

For the foregoing reasons, the judgments of the bankruptcy court, affirmed by the district court, are again AFFIRMED.