### In re IRONSIDES, INCORPORATED, Debtor.

### Bankruptcy No. 38202325.

United States Bankruptcy Court,
W.D. Kentucky.

Nov. 10, 1983.

■■■■■■■■■■■■■■

August A. Klapheke, Louisville, Ky., for debtor.

Charles E. Peyton, Louisville, Ky., trustee.

## MEMORANDUM

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The question here is whether to permit the continuation of a Chapter 11 proceeding for the sole purpose of preserving a substantial but remotely contingent asset in the form of a tax attribute, an $840,000 net operating loss carry-forward.

Ironsides, Inc., once a manufacturer of high-quality steel-belted automobile tires, filed its Chapter 11 petition in October, 1982. Largely due to successful post-petition efforts of secured creditors to foreclose on corporate properties, Ironsides presently has no plant or equipment, no inventory or accounts receivable, no operating management, no employees. It is in the literal sense a shell corporation, whose sole assets are (1) $46,600 in cash being held in a trust account by corporate counsel, which amount is subject to such administrative expenses as may have been incurred in the course of the Chapter 11 proceeding, (2) limited inventory of little or no value being held by a creditor with the debtor's consent, and (3) the net operating loss carry-forward previously mentioned.

Procedurally speaking, the question of whether to continue the Chapter 11 effort comes before the court in the form of a motion by the debtor-in-possession to convert the proceeding to one in liquidation.

Motions of this sort have a high probability of success. Because a commitment to a continuing reorganization effort by a debtor-in-possession is crucial to any Chapter 11 plan, the election to liquidate is generally honored, barring actual prejudice to creditors and other parties in interest.

The rationale favoring a debtor's motion to convert is simple. Since the selection of a Bankruptcy Code chapter under which to proceed is itself a matter of qualified statutory right, in the ordinary case there would be nothing to prevent a debtor from choosing a liquidation proceeding in the first instance. Similarly, once again assuming no real prejudice to creditors, there should be nothing to prevent resort to that ultimate option after an unsuccessful reorganization attempt.

In addition to the practical impediments to a coerced Chapter 11 effort there are strictly legal ones as well, not the least of which is the constitutional prohibition against involuntary servitude. In any event, the "involuntary Chapter 11" has early proven to be a rare and obsolescent species. See In re Worthington, Bench Order, February 2, 1983 (No. 38200380), denying creditor's motion to convert Chapter 7 proceeding to Chapter 11, affirmed, In re Worthington, Order of August 8, 1983 (No. C. 82–0422–L(B)).

To digress for a moment, the Ironsides case started with a bang and is ending with a whimper. At the time of filing there was pending in federal district court a suit in the nature of a stockholders' derivative action, and the rancor and animosity of the two opposing major stockholders there engaged poured over instantly into the bankruptcy proceeding.

Charges and countercharges of illegality were traded; there was bitter infighting between opposing counsel; questions of corporate control and standing to file in Chapter 11 lurked unanswered. A receiver was appointed and recommended the appointment of an impartial Chapter 11 trustee, implicitly recommending a liquidation. In sum, the scenario raised the spectre of ugly confusion we had only recently encountered in Re Chou-Chen Chemical Co., 31 B.R. 842 (Bkrtcy.W.D.Ky.1983), out of which little good could come.

The heat and passion of the case was almost entirely dissipated by the entry of an order lifting the § 362 automatic stay, in an action brought by two creditors holding

mortgages on the plant and equipment. Their complaint was, for all practical purposes, unopposed. By agreement between those creditors and Ironsides, certain limited inventory at the plant was to be held by the creditors in possession, rendering unnecessary the immediate appointment of a trustee and presumably the attendant expense.

The motion to convert which we now contemplate is vigorously opposed by Stewart Smythe, one of the major stockholders and former president of the company. He continues to speak of the company and its employees fondly and in the present tense, as though we were dealing with an operating concern, when in fact there is nothing there. While we have genuine sympathy for the man in viewing this demise of his business dream, we are compelled to say that his continuing salvage efforts at this stage are obsessive rather than realistic.

The net operating loss carry-forward we have referred to has value only if profits can be generated against which it can be applied. Profits, in turn, would require a massive infusion of fresh capital. None has been offered.

There have been broad suggestions of the possibility of an alternative Chapter 11 plan being formulated and submitted by the unsecured creditors' committee, friendly to Smythe, but none has been forthcoming, although there is no legal impediment to the submission of such a plan.

In summary, if there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre* and liquidation should occur. We so order.