**In re PHOENIX–PICCADILLY, LTD., a/k/a, d/b/a Piccadilly Square Apartment Community, Debtor.**

**Bankruptcy No. 87–1891–BK–J–11.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

April 5, 1988.

Lawrence J. Hamilton, II, Jacksonville, Fla., for debtor.

John W. Ames, Louisville, Ky., for Future Federal Savings Bank.

Peter E. Meltzer, Philadelphia, Pa., for Meritor Savings Bank.

R. Lawrence Baird, Louisville, Ky., for Life Insurance Co. of Virginia.

James H. Post, Jacksonville, Fla., for Secured Lenders.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW ON MOTION
TO DISMISS

GEORGE L. PROCTOR, Bankruptcy Judge.

Before the Court is the motion of three secured creditors, Meritor Savings Bank ("Meritor"), acting for itself and as agent for Colwell Financial Corporation ("Colwell"), Future Federal Savings Bank of Louisville, Kentucky ("Future Federal"), and The Life Insurance Company of Virginia ("Virginia Life") (collectively, the "Secured Creditors"), to dismiss this chapter 11 case for cause, pursuant to § 1112 of the Bankruptcy Code, for the reason that the case was not filed in good faith. An evidentiary hearing on the motion was held on April 4, 1988. The Court, having considered the evidence and argument of counsel, makes the following findings of fact and conclusions of law:

*Findings of Fact*

1. The debtor, Phoenix–Piccadilly, Ltd. (the "Debtor"), commenced this Chapter 11 case on November 19, 1987 (the "Petition Date").

2. The Debtor is a Kentucky limited partnership whose sole asset is, as described by the Debtor, "a beneficial trust interest" in the property known as Piccadilly Square Apartments located in Louisville, Kentucky (the "Property"). Legal title to the Property is held by Citizens Fidelity Bank and Trust Company of Louisville.

3. The Property is comprised of four phases known as Phases I, II, III and IV. Meritor is the primary lender of Phase I of the Property and is the holder of a promissory note (the "Phase I Note") and a first mortgage lien on Phase I. Colwell is the primary lender on Phase IV of the Property and is the holder of a promissory note (the "Phase IV Note") and a first mortgage lien on Phase IV. Meritor has a 90% participation interest in the Phase IV Note and the mortgage secured thereby. Future Federal is the primary lender and holds a first mortgage lien on Phase III. Virginia Life is the primary lender and holds a first mortgage lien on Phase II. In addition, Paul A. Evola and Ronald F. Heltinger hold a note which is secured by a "wraparound" mortgage encumbering the entire Property.

The Debtor listed the total claims of these secured creditors in its schedules to be in excess of $12,000,000.

4. On June 19, 1987, Future Federal instituted an action to foreclose its mortgage on Phase III of the Property styled as *Future Federal Savings Bank v. Citizens Fidelity Bank and Trust Company, et al.,* which is presently pending in the Circuit Court, Jefferson County, Kentucky, Division 5 as case number 87–C–I–05144 (the "State Court Action").

5. On June 29, 1987, an order was entered in the State Court Action appointing a receiver for Phase III of the Property. It was determined at that time, and the Debtor later admitted, that the Debtor had "used" approximately $42,000 of the tenants' security deposits to pay certain debts of the Debtor.

6. Virginia Life and Meritor filed cross claims in the State Court Action to foreclose their respective mortgage liens. Virginia Life and Meritor also filed motions for the appointment of a receiver for Phases I, II and IV of the Property. A hearing on these receiver motions was scheduled in the State Court Action for November 20, 1987.

7. On November 19, 1987, the day before the hearing in the State Court Action to appoint a receiver for Phases I, II and IV, the Debtor filed its Chapter 11 petition.

8. Admissions of the Debtor's agent, Lester N. Garripee, reveal the Debtor's motive for filing its petition. In a letter to the Debtor's limited partners dated July 16, 1987, Garripee detailed a plan "to fight Future Federal's foreclosure action" and, most tellingly, to posture the Debtor "to make whatever legal defenses are appropriate to forestall Future Federal actions, including, if advisable, the filing of a Chapter 11 Bankruptcy Petition."

9. Moreover, Joey Bailey, President of Future Federal Savings Bank, testified that on July 21, 1987, another agent of the Debtor, Claude Hesse, threatened to forestall Future Federal's foreclosure action "for years" by filing a Chapter 11 case in a location "far from Louisville, Kentucky."

10. As of the Petition Date, the Debtor had unsecured debt of less than $150,000, and less than $50,000 if its unsecured debt to its affiliated company is excluded.

11. The only persons employed by the Debtor, other than the general partner, were the 15 persons performing maintenance and related services at the Property in Kentucky under the supervision of the Debtor's affiliated management company.

12. The venue chosen by the Debtor for its Chapter 11 filing was over 700 miles from Louisville, Kentucky, where the apartment complex, its employees, its secured and unsecured creditors, and the pending State court proceedings were located.

### Conclusions of Law

13. A case under chapter 11 may be dismissed for cause pursuant to § 1112 of the Bankruptcy Code if the petition was not filed in good faith. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984).

14. Bankruptcy Courts have the principal responsibility to enforce the requirement of good faith in order to protect the institutional integrity of the bankruptcy courts, to preserve their public esteem and to accomplish equity in specific cases.

"[r]equirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons ... available only to those debtors and creditors with 'clean hands.'" *In re Little Creek Development Corporation*, 779 F.2d 1068, 1072 (5th Cir.1986).

15. As stated by the Eleventh Circuit, there is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir.1987). Thus, the Court's evaluation of the Debtor's motive in filing its Chapter 11 petition is central to the determination of good faith. *In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986).

16. In this case there is direct evidence, in Garripee's July 16, 1987 letter and in Hesse's statements to Future Federal, that the Debtor's filing was not made in good faith, but instead for the purpose of "forestall[ing]" the Secured Creditors' legitimate efforts to enforce their rights in the Property.

17. Further, many of the circumstantial factors which have been identified by the courts as evidencing a bad faith filing are present in this case:

(i) The Debtor has only one asset, the Property, in which it does not hold legal title;

(ii) The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii) The Debtor has few employees;

(iv) The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v) The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and

(vi) The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*See In re Little Creek Development Co., supra* at 1073; *In re Natural Land Corp., supra* at 298; *In re Heritage Wood'N Lakes Estates, Inc.*, 73 B.R. 511, 514 (Bankr.M.D.Fla.1987); *In re Sar–Manco, Inc.*, 70 B.R. 132, 141 (Bankr.M.D.Fla. 1986).

18. The Court concludes, based on this direct and circumstantial evidence of the Debtor's motive in filing its chapter 11 case, that the petition was not filed in good faith, but rather, for the purpose of delaying and frustrating the efforts of the Se-

cured Creditors to enforce their rights in the Property. The Debtor's financial problems involve essentially a dispute with the Secured Creditors which can and should be resolved in the pending proceedings in the State Court Action.

19. This conclusion is not affected by the possibility that the Debtor may have equity in the Property and therefore a realistic prospect of formulating a feasible plan of reorganization. This Court may not ignore the clear evidence of bad faith in this case merely because the Debtor may have the prospect of a successful reorganization. *In re Natural Land Corp., supra* at 298. Accordingly, the Court finds it unnecessary to make any finding regarding the amount, if any, of equity in the Property.

20. By reason of the foregoing, the Secured Creditors' motion to dismiss this case will be granted for cause shown pursuant to § 1112 of the Bankruptcy Code, and an order will be entered in accordance with these findings of fact and conclusions of law.