**In the Matter of Robert NAMER, Debtor.**

**Bankruptcy No. 91–15360–K.**

United States Bankruptcy Court, E.D. Louisiana.

April 8, 1992.

James F. Quaid, Metairie, La., for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THOMAS H. KINGSMILL, Jr., Bankruptcy Judge.

This matter comes before the Court on the Motion to Dismiss filed by the Federal Trade Commission ("FTC"), a judgment creditor of Robert Namer and his wholly owned company, National Business Consultants, Inc. ("NBC") (Namer and NBC hereinafter collectively "Debtors"). The FTC argues that the Chapter 11 petitions filed by Debtors lack the requisite good faith to remain in bankruptcy and should be dismissed pursuant to 11 U.S.C. § 1112. Debtors filed a written response to the FTC's motion and, with due notice to Debtors and all concerned parties, this matter came before the Court for hearing on February 5, 1992. Having considered the written submissions of all parties in interest, the complete record in the case, the applicable law, and the arguments of counsel, the Court enters the following Findings of Fact and Conclusions of Law. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

1. On November 8, 1991, the U.S. District Court for the Eastern District of Louisiana entered a money judgment against Debtors, jointly and severally, and in favor of the FTC in the amount of $3,019,377.00, plus prejudgment interest, costs, and fees, in a law enforcement action captioned *FTC v. National Business Consultants, Inc. and Robert Namer, a/k/a Robert Behar, a/k/a Mark Simon,* 781 F.Supp. 1136

(E.D.La.1991). The stated purpose of the judgment is for payment of monetary redress to consumers injured by Debtors' deceptive trade practices. In awarding consumer redress, the District Court stated that "equity also requires" that the existing court-ordered asset freeze on Debtors' assets must "remain in full force and effect on the assets of both (and each) of the defendant(s) [Debtors herein] until the money judgment entered in this case is fully satisfied."

2. On November 18, 1991, Debtors noticed their appeal to the Fifth Circuit of all orders of the District Court in the FTC lawsuit. Also, on November 26, 1991, Debtors petitioned the District Court to modify its asset freeze and release $10,000 to finance their appeal. The District Court dismissed the petition for lack of jurisdiction, since Debtors previously had noticed the appeal of all of its orders to the Fifth Circuit. Debtors then brought to the Fifth Circuit their motion for release of $10,000 to finance their appeal, and, at the same time, asked the Fifth Circuit to stay the FTC's monetary judgment pending appeal without the need to post a supersedeas bond. By order dated December 13, 1991, the Fifth Circuit denied both motions.

3. Upon the expiration of ten days after entry of the District Court judgment awarding consumer redress, and prior to the Debtors' motion for stay of the judgment, the FTC had initiated proceedings in aid of its judgment in accordance with Rules 62 and 69, Fed.R.Civ.P. Among other things, the FTC noticed the deposition of Luna Poplausky (Namer's aunt and trustee of a trust that Namer created) to convene on December 19, 1991. The deposition subpoena was issued by the U.S. District Court for the Eastern District of New York, the district in which Poplausky lives. Debtors filed a motion to quash the Poplausky subpoena, which motion was heard and denied by the issuing court (E.D.N.Y., Raggi, J.)

on December 18, 1991, one day before the scheduled deposition.

4. During the hearing on the motion to quash, on the record, Debtors' counsel stated his intention to file Chapter 11 petitions on Debtors' behalf if the District Court denied the motion to quash.[1]

5. The FTC, in a letter dated December 24, 1991, which included case citations, informed Debtors' counsel that the filing of a voluntary bankruptcy petition does not vitiate an asset freeze order previously entered by a District Court as part of an injunctive order in a governmental enforcement action. *See FTC v. R.A. Walker & Associates, Inc.*, 37 B.R. 608 (D.D.C.1983); *see also SEC v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir.1981).

6. On December 18, 1991, one day before the scheduled Rule 69 deposition, and only five days after the Fifth Circuit denied their motions for a stay and for release of assets to finance an appeal, the Debtors' motion to quash was denied. Debtors immediately thereafter filed their Chapter 11 petitions with this Court, thereby invoking the automatic stay, and precluding the FTC from proceeding with the Poplausky deposition, or with any other steps in aid of collecting its monetary judgment.

7. The timing of the filing of the bankruptcy petitions, the large, non-dischargeable debt due to the FTC, and the weight of the credible evidence establish that, by filing these petitions, the Debtors sought: 1) to obtain the stay of the FTC's judgment without bond that the Fifth Circuit denied five days earlier; and 2) in the process, to block the imminent Poplausky deposition, which the District Court, E.D.N.Y., ruled should proceed on the following day. As explained in the Conclusions of Law below, each of these purposes is an inappropriate basis upon which to file a Chapter 11 bankruptcy petition. Debtors' petitions were filed in bad faith.

1. "I have to say to you and counsel for the FTC I'm sitting here looking at some proposed schedule for a Chapter 11 filing and I think that will eliminate alot of questions, [I'll] go ahead and file a Chapter eleven on behalf of Robert Namer and National Business Consultants today and that would divest—divest the district courts—your court and the Eastern District of Louisiana of any jurisdiction." Transcript of Motion Before the Honorable Reena Raggi, December 18, 1991, Pg 8, ln. 16–22.

8. This Court finds that the Debtors are not viable candidates for reorganization under the Bankruptcy Code for several reasons. Debtors' own written admissions to the District Court in the FTC lawsuit confirm that NBC has not been, for some time now, an ongoing business which could be preserved through reorganization—it has no employees to protect, no income stream, and no hope of rehabilitation. Debtors acknowledged that NBC stopped doing business more than two years ago when they sought a release from the District Court's asset freeze to meet "final payroll obligations" when NBC ceased operating.[2] Additionally, Debtors have subsequently confirmed that NBC remains defunct.

9. Likewise, Namer has admitted, by filing his Request to Proceed on Appeal in Forma Pauperis, filed May 23, 1990, that he has had no source of income, personally, since early 1990. Namer certified in his Schedule of Assets filed with this Court, that he has earned no income from employment during, at least, the past two years.

10. Additionally, the most recent years for which NBC tax returns are available confirm that NBC is not a potentially viable business that may be rehabilitated through Chapter 11 proceedings by revealing that NBC's taxable net income was only $69.00 in 1986, $1,786 in 1987 and $8,741 in 1988.

11. The tax liability that Debtors list on their Schedules filed with the Court may be nondischargeable and thus further diminish the plausibility of reorganization. Both NBC's and Namer's petitions identify a $20,000 IRS debt for "Federal Corporate Taxes," which is actually a debt for failure to pay payroll taxes on behalf of NBC employees during part of 1989. Such a debt may be nondischargeable under 11 U.S.C. § 523(a)(1)(A) and § 507(a)(7)(D).

## CONCLUSIONS OF LAW

1. Title 11, United States Code, Section 1112(b) provides in pertinent part:

"Except as provided in subsection (c) of this section, on request of a party in interest ... and after notice and a hearing, the court may ... dismiss a case under this chapter ... for cause...."

■ 2. Numerous cases have found a debtor's lack of good faith when filing a petition in bankruptcy to constitute "cause" for dismissing a case pursuant to 11 U.S.C. § 1112(b). *In re Karum Group,* 66 B.R. 436 (Bankr.W.D.Wash.1986); *In re Smith,* 58 B.R. 448 (Bankr.W.D.Ky.1986); *In re Wally Findlay Galleries,* 36 B.R. 849 (Bankr.S.D.N.Y.1984). Petitions that manipulate the Bankruptcy Court to serve as a mechanism for a stay on appeal without a supersedeas bond are properly dismissed for lack of good faith. *Karum,* 66 B.R. at 436 ("Chapter 11 was filed as a litigation tactic to circumvent the requirement of a supersedeas bond...."); *Smith,* 58 B.R. at 448 (Chapter 11 filing may not "... be used as the functional equivalent of a supersedeas bond." Case dismissed with prejudice); *Wally Findlay,* 36 B.R. at 849 ("This court should not, and will not, ... substitute for a supersedeas bond...."). Likewise, this Court will not act as a substitute for a supersedeas bond.

■ 3. When attacking a debtor for lack of good faith in the filing of a petition, the movant must first establish a *prima facie* showing of bad faith to shift the burden to the debtor to offer proof that the petition was in fact filed in good faith. *In re Davis,* 93 B.R. 501 (S.D.Tex.1987). Considering the timing of the filings (five days after the Fifth Circuit denied the Debtors' motion for stay without bond and for release of funds for appeal, and one day before the first scheduled deposition in aid of execution on the FTC's judgment); the large nondischargeable debt owed to the FTC, which the FTC appears to have pursued aggressively; the FTC has estab-

2. Debtors' Memorandum in Support of Defendant's Motion for Partial Release of Assets to Pay Past Due and Final Payroll, signed by Namer and dated Feb. 9, 1990, states in pertinent part, "... NBC has consistently reduced the number of its employees as it has been able to wind down and close its business. The court may be aware of the public announcement made by Namer stating that NBC was suspending its operations. NBC has now totally ceased operations...."

lished a *prima facie* showing of the Debtors' lack of good faith.

4. In response, the Debtors have offered only their blanket "categorical denial" of bad faith and mere assertion that they filed in a good faith effort to reorganize. Debtors, after a full and fair opportunity to respond, have presented no testimony, affidavits, documents, or evidence of any kind to rebut the FTC's *prima facie* showing. The Court is not persuaded by the Debtors' denial in view of the suspect timing of the filings and the failure of Debtors to pass the crucial test of potential rehabilitation. Therefore, Debtors have failed to meet their burden of proving that the petitions were filed in good faith.

5. The Fifth Circuit case of *In re Little Creek Devel. Co.*, 779 F.2d 1068 (5th Cir. 1986), although factually different, sets forth the applicable guidelines for this Court to follow in deciding whether the Debtors' filings were in good faith. In *Little Creek*, a secured creditor sought the lifting of the automatic stay so that it could foreclose on the debtor's single asset, two parcels of undeveloped real estate. The principal issue on appeal was whether the bankruptcy court was clearly erroneous in finding, *sua sponte*, without prior notice to debtors and hearing on the issue, that debtor's petition lacked good faith, based solely on the remarks of counsel of an inappropriate motive for filing the petition. In remanding the matter for further proceedings so that evidence could be taken and debtors given an opportunity to respond, the Fifth Circuit provided guidance to the Bankruptcy Court to assist it to determine properly on remand whether "cause" actually existed. *Id.* at 1074.

6. The Fifth Circuit stated that a determination of whether the debtor's filing for relief is in good faith depends largely upon the Bankruptcy Court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith are normally based on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. *Id.* at 1072. The Court then enumerated conditions to help identify when a petition lacks good faith, noting that "several, but not all, of the following conditions usually exist" in such cases. *Id.* at 1072–73. Several *Little Creek* conditions appear in this case to support the conclusion of bad faith.

7. Here, "the debtor and one creditor [FTC] ... have proceeded to a stand-still in ... litigation, and the debtor has lost or has been required to post a bond which it cannot afford." *See id.* at 1073. Also, "[t]here are ... allegations of wrongdoing against the debtor or its principals." *Id.* The allegations of wrongdoing against Debtors in this case range from their deceptive conduct that forms the basis for the underlying FTC judgment, to their improper purpose in filing these petitions.

8. Further, "there are ... no employees except for the principals, ... no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments...." *See id.* The presence of these *Little Creek* conditions supports the conclusion that Debtors' petitions lack good faith.

9. Debtors' argument that *Little Creek* supports their good faith because they have more than one asset is unpersuasive because the Fifth Circuit expressly stated that, while the one-asset entity situation is an example, "*it does not uniquely categorize*, bad faith cases." *Id.* at 1073 (emphasis added). A petition can be filed in bad faith by a debtor who has multiple assets.

10. The Fifth Circuit in *Little Creek* went on to explain that resort to protection under the bankruptcy laws when several of its enumerated conditions exist is not proper because "there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id.* at 1073. "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its 'raison d'etre'...." *Id., quoting In re Ironsides, Inc.*, 34 B.R. 337, 339 (Bankr.W.D.Ky. 1983).

11. The petitions at issue here present such a situation. Debtors' admitted lack of income over the past several years and the nondischargeability of the FTC's debt (Debtors' largest financial obligation) demonstrate that Debtors cannot reasonably expect to rehabilitate their financial situation by resort to Chapter 11. Debtors' argument that their business is viable because they can "quickly begin to regenerate" a substantial cash flow by reinstituting NBC's prior business practices "under the protection of this Court" as part of a Chapter 11 plan, misses the point that Debtors cannot rely on their previous business practices to "build an income stream" since the District Court's permanent injunction prohibits them from engaging in the deceptive business practices that previously yielded that "substantial cash flow."

12. Since NBC is a corporation and is attempting to reorganize under Chapter 11, it is not entitled to a discharge of the debt due to the FTC. *See* 11 U.S.C. § 1141(d)(3)(C). Namer, too, is unable realistically to rehabilitate his personal financial condition through Chapter 11 in light of the FTC debt. While the Supreme Court recently confirmed that Chapter 11 is available to individuals as well as businesses, in doing so, the Court specifically noted the "substantial discretion" of the Bankruptcy Court to dismiss an individual's petition when a plan of reorganization is untenable. *Toibb v. Radloff,* — U.S. —, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). The present value of Namer's personal assets, as certified in the Schedules he filed with this Court, is wholly insufficient to satisfy the FTC debt. That fact, when combined with Namer's admitted lack of any income stream and the fact that the FTC debt against him personally is nondischargeable demonstrates that Namer cannot reasonably expect to rehabilitate his financial situation by resort to Chapter 11.

13. Namer is not entitled to a discharge of the FTC debt because it is a debt for "money ... obtained by ... false pretenses, a false representation, or actual fraud," as described in 11 U.S.C. § 523(a)(2)(A) (emphasis added). *See In re Thompson,* 1989–1 Trade Cas.Para. 68,438 (Bankr.C.D.Cal.1989) (debt to FTC arising out of FTC Act suit for material misrepresentations in marketing of business opportunity held nondischargeable under § 523(a)(2)(A) as debt for money obtained by false representation).

14. The District Court in the FTC's lawsuit against these Debtors has already determined that the FTC debt here exists to effect the return to defrauded consumers of money that Namer obtained from them by false representation. The FTC's judgment is premised on Namer's misrepresentations of material fact, made with the requisite knowledge and purpose to deceive, on which the victims of his franchise scam reasonably relied, and sustained loss and damage as a proximate result. These previously-decided facts are the same facts that the FTC would otherwise need to establish in this Court to prove a discharge exception based on "false representation." *See, e.g., In re Rubin,* 875 F.2d 755, 759 (9th Cir.1989); *In re Singleton,* 37 B.R. 787, 790 (Bankr.D.Nev.1984).[3]

15. The doctrine of collateral estoppel thus applies to preclude re-litigation of the issue of "false representation," because it is a factual issue that was actually litigated before the District Court in the FTC lawsuit, where its determination was necessary to the final judgment, and where Debtors were parties, duly represented by counsel, who actively participated in the prior adjudication. *Grogan v. Garner,* 495 U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (collateral estoppel applies to estab-

**3.** While the cases typically formulate a reliance element in terms of the "creditor's" reliance, when the FTC is the judgment creditor, the element requires a showing that *consumers* paid money in reasonable reliance upon the debtor's misrepresentations. *Thompson,* 1989–1 Trade Cas. at Para. 60,410; *see In re Miller,* 112 B.R. 937 (Bankr.N.D.Ind.1989) (insurance company as assignee of policyholder's claim properly shows policyholder's reliance on debtor's misrepresentations); *see also, In re Calhoun,* 131 B.R. 757, 760 (Bankr.D.D.C.1991) (FDIC as receiver of failed bank must allege that bank relied upon debtor's misrepresentations).

lish discharge exception under § 523(a)(2)(A) based on prior judgment for violation of antifraud statute [like FTC Act] with preponderance-of-evidence proof standard), *citing In re Shuler*, 722 F.2d 1253, 1256 (5th Cir.), *cert. denied* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *see also, In re Chapman*, 125 B.R. 284, 286 (Bankr.S.D.Cal.1991) (enumerating the above-stated collateral estoppel elements for § 523 discharge exception).

16. Even if Debtors here had a realistic prospect of formulating a reasonable plan, which the above Findings and Conclusions establish they do not, the "Court cannot ignore direct evidence of bad faith in this case merely because the Debtor may have the prospect of successful reorganization." *In re Phoenix–Piccadilly, Ltd.*, 84 B.R. 843, 846 (Bankr.M.D.Fla.1988) (dismissing petition filed one day before hearing to appoint receiver, by debtor with few employees, with evidence of admissions by debtor's agent that motive for filing was to forestall such action). Regardless of reorganization feasibility, "the Court's evaluation of the Debtor's motive in filing its Chapter 11 petition is central to the determination of good faith." *Id.* at 845, *citing Little Creek*, 779 F.2d at 1072.

17. The timing of the filing to serve as a stay and the nondischargeability of the largest debt, coupled with other evidence of improper motive, such as the attempt to obstruct a key deposition, presents several independent indicia of bad motive and compel the conclusion that Debtors filed these petitions as a litigation tactic with no intent or hope of legitimate reorganization. To permit Debtors to obtain bankruptcy protection under such circumstances would subvert the appropriate purposes of the bankruptcy process with the unseemly result of allowing the Bankruptcy Court to become a haven for wrongdoers.

18. In view of the Debtors' bad faith conduct, the FTC's motion to dismiss these bad faith petitions for cause is granted with prejudice against the filing of further bankruptcy petitions. *Smith*, 58 B.R. at 451 (bad faith petition dismissed with prejudice); *Forest Activities*, 81 B.R. 720, 723

(S.D.Fla.1988) (same, with prejudice against debtor filing another case seeking relief under any chapter of the Code for one year from date of order). An appropriate order will be entered.