**In re Orville B. NICHOLS, II, Debtor.**

**Bankruptcy No. 97–03255–M.**

United States Bankruptcy Court,
N.D. Oklahoma.

March 10, 1998.

---

Neal Tomlins, Tulsa, OK, for Debtor in Possession.

· Richard Garren, Tulsa, OK, for Creditor Gayle Nichols.

### MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to the Motion to Dismiss Bankruptcy (the "Motion to Dismiss") filed by Gayle Nichols, a creditor herein ("Ms. Nichols"), on October 28, 1997, and the Objection to Motion to Dismiss Bankruptcy (the "Objection") filed by Orville B. Nichols, Debtor herein ("Mr. Nichols") on December 15, 1997. Ms. Nichols seeks dismissal of this Chapter 11 case on the grounds that it was filed in bad faith. For the reasons set forth herein, the Motion to Dismiss is granted.[1]

An evidentiary hearing was held in the matter on January 26, 1998. Ms. Nichols appeared personally and through her attorney Richard T. Garren. Mr. Nichols appeared personally and through his attorney Neal Tomlins. Mr. Richard J. Nichols appeared through his attorney Gary McDonald. American Bank and Trust Company appeared through its attorney, Rodney Edwards. The Court received evidence and heard arguments from the parties. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[2] and venue is proper pursuant to 28 U.S.C. § 1409. Ref-

---

1. In addition to the Motion to Dismiss, the Court had scheduled for hearing the Motion for Clarification of Order Granting Relief from Stay (the "Motion for Clarification") filed by Ms. Nichols on October 27, 1997, and the Motion to Extend Exclusive Period of Section 1121(b) and Notice of Opportunity for Hearing (the "Motion to Extend") filed by Mr. Nichols on November 10, 1997. Because the Court grants the Motion to Dismiss, it does not reach the merits of these motions.

2. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (West 1998).

erence to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (G).

**Burden of Proof**

The burden of proof for dismissal of a Chapter 11 bankruptcy case for lack of good faith is on the movant and/or creditor to establish by a preponderance of the evidence. *In Matter of Woodbrook Assoc.*, 19 F.3d 312, 317 (7th Cir.1994). Once a movant and/or creditor has established a *prima facie* showing of bad faith by a preponderance of the evidence, the burden shifts to the debtor to show that the petition in bankruptcy was filed in good faith. *In Matter of Namer*, 141 B.R. 603, 606 (Bankr.E.D.La.1992).

**Findings of Fact**

This Chapter 11 bankruptcy case was filed July 16, 1997, by Mr. Nichols. He is currently employed by Noco Investment Corporation ("Noco") as its Manager of Operations. Mr. Nichols is a well-educated individual, with a bachelor's degree in business from the University of Tulsa, and a master's degree in business administration ("MBA") from Southern Methodist University. Mr. Nichols is paid a gross salary of $5,000 per month from Noco, which leaves him with a monthly net income of $3,098 after deductions.

Mr. Nichols and Ms. Nichols are husband and wife, though estranged. They were married on August 18, 1973. Two children were born of the marriage, Natalie Anne, 19, and Christen Cassidy, 16. Christen Cassidy Nichols currently lives with her mother at their home in Colorado Springs, Colorado.

*The Divorce Action*

Mr. and Ms. Nichols have been involved in a protracted and hotly contested divorce action in the Tulsa County District Court (the "State Court"), entitled *Gayle L. Nichols v. Orville B. Nichols,* FD 94–00230 (the "Divorce Action") for over four years.[3] As of

the date of this Opinion, no decree of divorce has been entered and the Divorce Action remains unresolved.

On December 18, 1995, the State Court entered an Agreed Temporary Order (the "Agreed Order") which was approved as to form and content by counsel for both parties, and which bears the signature of Mr. Nichols. The Agreed Order was filed on December 20, 1995, and was subsequently modified by several other orders.[4] Pursuant to the Agreed Order as modified, Mr. Nichols was obligated to provide the following temporary support to Ms. Nichols and the children born of the marriage as of the date this bankruptcy case was filed:

1. make monthly payments of $1,300 in alimony and $500 in child support;

2. continue payment on all joint debts incurred by Mr. and Ms. Nichols;

3. pay any reasonable credit card debt for gasoline and automobile expenses incurred by Ms. Nichols not to exceed $100.00 per month without approval of Mr. Nichols;

4. continue the car payments on Ms. Nichols' car, a 1993 Toyota 4–Runner;

5. pay and maintain all insurance payments;

6. pay all medical, dental, prescription and other medical-related bills not covered by insurance incurred by Ms. Nichols;

7. pay for Cassidy's private school expenses; and

8. make an immediate payment of $5,000 to Ms. Nichols in order for her to retain an expert for the valuation of Mr. Nichols' various business interests.

*See Movant's Exhibits* 5, 11, 15 and 18. The last item ordered by the State Court goes to perhaps the heart of the dispute between Mr. and Ms. Nichols. According to the schedules and his testimony, Mr. Nichols at one time held an ownership interest in several busi-

---

**3.** The Divorce Action was filed on January 18, 1994, approximately three and one half years prior to the filing of this bankruptcy.

**4.** Agreed Temporary Order pursuant to a hearing on December 18, 1997; Order Modifying Temporary Order filed on January 23, 1997, pursuant to

a hearing held on September 10, 1996; Order Modifying Temporary Order filed on January 23, 1997, pursuant to a hearing held on December 9, 1996; Order Modifying Temporary Order from hearing held May 22, 1997 filed September 12, 1997.

ness entities, most or all of which he now claims are either no longer owned by him or have no value. Ms. Nichols believes that Mr. Nichols is doing all in his power to shield those assets from her and from the State Court. In order to allow her to fully and adequately investigate the various business interests of Mr. Nichols, the State Court awarded her $5,000 to hire an expert to review the books and records of Mr. Nichols' various business entities.

Mr. Nichols has a less than ideal track record in performing his obligations under the Agreed Order. On several occasions, Ms. Nichols sought enforcement of the Agreed Order through contempt proceedings in the State Court. At one point in time, Mr. Nichols was held in contempt of the State Court and sentenced to a six month jail term. Under that sentence, Mr. Nichols was jailed for one day, and the balance of the sentence was suspended as long as he remained current on his obligations under the Agreed Order. Mr. Nichols did so during the six month period of the suspended sentence. Ms. Nichols testified that Mr. Nichols defaulted on his obligations under the Agreed Order as soon as the six month period expired, a charge which Mr. Nichols denies. There can be no doubt that the threat of incarceration was a factor in the filing of this case. Upon cross-examination, Mr. Nichols testified that a compelling reason for filing the bankruptcy was to avoid being imprisoned again.

From the time of the filing of the bankruptcy case to the date the evidentiary hearing was held on the Motion to Dismiss, Mr. Nichols paid a total of $12,466.53 to Ms. Nichols in alimony and child support, which included all of the $1,800 monthly payments of child support and alimony required under the Agreed Order, as well as $623 in air fares to allow for child visitation, and $143.53 for eyeglasses for one of the children. None of the other items required to be paid under the Agreed Order were paid during this period. *See Debtor's Exhibit 10.*

*Assets*

Mr. Nichols testified as to the status of his business interests, including but not limited to those items which he now owns. The Court found much of Mr. Nichols' testimony evasive, casting doubt on his credibility as a sincere Chapter 11 debtor. Mr. Nichols repeatedly testified at the hearing that he is oblivious to the actual and specific business ownership interests he holds in a variety of corporations, including Noco. He unequivocally testified that he does not hold an ownership interest in Noco. However, in a June 1, 1995, financial statement signed by Mr. Nichols (and Ms. Nichols) and given to American Bank & Trust Co. ("American Bank"), Mr. Nichols represented that he owned 50% of Noco. *See Movant's Exhibit 30.* In addition, the partnership tax returns filed by Noco list Mr. Nichols as a 50% owner of Noco. *See Movant's Exhibit 28A.* Mr. Nichols was unable to explain the inconsistencies between these documents and his claim not to own an interest in Noco. When various discrepancies were pointed out between his financial statements, his tax returns and his testimony, his rebuttal was that he did not know why his tax returns would be inaccurate, and, if they were, they would be amended. It is difficult for this Court to accept that a well-educated, sophisticated executive like Mr. Nichols has no knowledge or understanding of the business ownership interests he holds. Debtor testified that he produced thousands of documents at the request of Ms. Nichols. It is apparent that those efforts have not established what business interests are actually owned by Mr. Nichols.

At the time the bankruptcy case was filed, the marital estate was the owner of two major parcels of real estate, a residence located in Tulsa, Oklahoma (the "Residence") and a recreational cabin located at Grand Lake, Oklahoma (the "Lake Cabin"). An interest in the Lake Cabin is also claimed by Richard Nichols and Patricia Nichols, the brother and sister-in-law of Mr. Nichols. Efforts to sell these parcels in the course of the Divorce Action proved unsuccessful. However, each of these properties have been sold since this case was filed, using the provisions found in § 363 of the Bankruptcy Code. *See Docket nos. 34 and 64,* respectively. The net sale proceeds are being held by Mr. Nichols pending further order of this Court.

*Liabilities and Creditor Pressure*

In his schedules, Mr. Nichols listed the following liabilities:

Secured Creditors:

| Creditor | Amount |
|---|---|
| Mellon Mortgage (Residence) | $137,500 |
| American Bank & Trust (Residence) | 27,138 |
| Lester Mecum Estate (Lake Cabin) | 40,000 |
| American Bank & Trust (other real estate) | 80,194 |
| Bank IV (Toyota 4–Runner) | 4,955 |
| Richard J. Nichols | 23,413 |
| (pledge of "business interests") | |
| Community Bank | 11,000 |
| (pledge of "business interests") | |

Priority Creditors:

| Creditor | Amount |
|---|---|
| Internal Revenue Service | $ 10,539 |
| Oklahoma Tax Commission | 6,314 |

Unsecured Creditors:

| Creditor | Amount |
|---|---|
| Noco Investments | $ 94,250 |
| Gayle Nichols | 5,200 |
| Diana Clark (legal fees) | 7,000 |
| Barber & Bartz (legal fees) | 5,231 |
| Other Miscellaneous Creditors | 10,300 |

Mr. Nichols testified that pressure from his creditors caused the filing of this bankruptcy case, attempting to dispel the notion that the case was filed to escape the consequences of the Divorce Action. A close examination of the status of these debts leads the Court to conclude as a matter of fact that there was little, if any, pressure placed on Mr. Nichols except for the pressure exerted by Ms. Nichols in the Divorce Action.

With respect to the mortgage debts on the Residence and the Lake Cabin, Mr. Nichols testified that he was one or two months behind on these monthly payments at the time the case was filed. There was no evidence or indication that any of these creditors were pressuring Mr. Nichols for payment. There was no evidence that these creditors had commenced any collection efforts prior to the filing of this case. The Residence and the Lake Cabin have now been sold and the mortgage debts satisfied. Certainly no pressure will be exerted by these creditors in the future.

Mr. Nichols also testified that he was being pressured by the taxing authorities listed in his schedules. Upon examination, this statement lacks credibility. There is no evi-

dence before the Court that the taxing authorities placed any pressure on Mr. Nichols prior to the filing of this case.[5] The proof of claim filed by the IRS indicates that taxes and interest in the amount of $7,703.20 were not assessed until August 4, 1997, almost two (2) months after the filing of the bankruptcy. There is no evidence that the OTC assessed any taxes or conducted any collection activity prior to the filing of the bankruptcy case.

With respect to the debt to Noco scheduled in the amount of $94,250, the Court notes that Mr. Nichols is (or at least at one time was) an owner and an executive of Noco. The exact nature and amount of the Noco debt has been difficult for the parties to grasp, both in the Divorce Action and in this case. In discovery responses provided in the Divorce Action, Mr. Nichols stated that the balance on the Noco debt on November 19, 1995 was approximately $150,000, an amount almost $60,000 greater than the amount scheduled in this case. *See Movant's Exhibit 3.* At the hearing before this Court, Mr. Nichols testified that he was not sure why the full amount of $150,000 was not included in his bankruptcy schedules and why the debt did not include interest. According to the interrogatory no scheduled payments were due, but the repayment was to be made from Mr. Nichols' future earnings "as possible." *Id.* Noco filed a proof of claim in the amount of $120,076.33 as of October 23, 1997, stating that the debt was incurred over a period from January 29, 1992 to January 10, 1996. No promissory note representing the debt was executed until May 23, 1997. That note listed the principal sum due Noco as $94,250, and provided for interest at the rate of ten percent (10%) per annum. This promissory note did not come into existence until approximately two (2) months before the bankruptcy was filed. Once again, there is no evidence of pressure being exerted on Mr. Nichols by this creditor.

In addition to the Noco debt, Mr. Nichols lists in his schedules a debt of $23,413 owed

---

5. Listed in Mr. Nichols' schedules are tax debts to the Internal Revenue Service (the "IRS") in the amount of $10,539 and to the Oklahoma Tax Commission (the "OTC") in the amount of $6,314. However, the 1993 and 1994 income tax returns were not signed until February 17,

1997 and, according to Mr. Nichols' testimony, filed shortly thereafter. The 1995 federal and state tax returns were signed and dated May 5, 1997. The 1996 federal and state income tax returns were not signed until June 15, 1997 and June 2, 1997 respectively.

directly to his brother, Richard J. Nichols. The proof of claim filed by his brother lists the debt as a $22,903.40 secured claim (secured by corporate stock) incurred over the period of September 17, 1996 to May 15, 1997. This transaction is an intra-family transaction, with some of the debt incurred within two (2) months of the bankruptcy. There is no evidence at all that any pre-petition pressure was exerted on Mr. Nichols by Richard J. Nichols.

The debt of $11,000 owed to Community Bank was not incurred until June 13, 1997, only slightly over a month before Mr. Nichols filed his petition in bankruptcy. A large part of the loan was used to pay his legal fees in the current bankruptcy. With respect to the debt in the amount of $80,194 to American Bank, Nichols is merely a third party obligor. Counsel for American Bank appeared at the January 26, 1998, hearing and advised the Court that the debt owed to his client was current as of that date. Mr. Nichols also owes $4,955 to Bank IV on Ms. Nichols' automobile. According to the schedules, the equity in the car exceeds the debt owed on the car. The Court finds that this creditor did not exert any significant pressure on Mr. Nichols. According to Ms. Nichols, any collection efforts which Bank IV may have undertaken were directed at her, since she is in possession of the vehicle. There is no evidence in the record, other than his own self-serving statements, that any of these creditors exerted any pre-petition pressure for payment on Mr. Nichols.

Most of the of the other debts listed consist of relatively modest debts, minor retail charge card debts, one charge card debt in the amount of $5,685, monthly utility, phone and cable bills, and a medical bill in the amount of $752. Mr. Nichols did not offer any specific evidence of creditor pressure by any of the above entities. Mr. Nichols also schedules various legal fees which were incurred as a result of the Divorce Action. Mr. Nichols attempted to hire one of his pre-petition attorneys and creditors, the law firm of Barber & Bartz, as special counsel while proceeding in this bankruptcy.[6] *See Docket No. 38.* Again no evidence was introduced

and it is not apparent that any significant pre-petition creditor pressure was exerted on Mr. Nichols by any of these creditors.

After reviewing the evidence presented at the hearing and the proofs of claim filed herein by the taxing authorities, this Court finds that the only creditor who exerted significant pressure upon Mr. Nichols is his estranged wife, Ms. Nichols. Even though Mr. Nichols has incurred debts with a variety of other entities no evidence is before this Court that any of said entities have exerted significant pressure for payment, and none of the debts are so exorbitant as to make required monthly credit payments an insurmountable obstacle for Mr. Nichols.

*The Motion for Relief*

On July 30, 1997, Ms. Nichols filed a Motion for Relief From the Automatic Stay (the "Relief Motion"), seeking leave of this Court to continue the Divorce Action. On August 11, 1997, Mr. Nichols filed an Objection to the Relief Motion, protesting her request to continue the Divorce Action in State Court. *See Docket No. 28.* Mr. Nichols objected to the State Court deciding the division of assets and liabilities of the marital estate, and suggested that such a decision be undertaken by this Court. *Id.* This Court declined to do so. In a hearing on August 27, 1997, the Court granted Ms. Nichols relief from the automatic stay to proceed with the complete adjudication of the Divorce Action, including the division of the assets and liabilities of the marital estate in the State Court. *See Docket No. 41M.*

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

### The Motion to Dismiss

■ Ms. Nichols asks the Court to dismiss this bankruptcy case on the grounds that it has not been filed in good faith, and because the issues relating to the divorce of these two parties should be tried in the Divorce Action in the State Court and not the

---

6. The Court denied the request. *See Docket no. 49.*

bankruptcy court. Although not one of the stated factors found in the text of § 1112(b) of the Bankruptcy Code, it is well established that a bankruptcy case which is not filed in good faith may be dismissed under this section. *See In re Trident Assoc. Limited Partnership,* 52 F.3d 127, 130 (6th Cir.1995) (noting that eight circuits have so held), *cert. denied,* 516 U.S. 869, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995). The Sixth Circuit outlined a set of nonexclusive factors for a court to consider as it considered whether a particular bankruptcy case had been filed in good faith. *In re Laguna Assoc. Ltd. Partnership,* 30 F.3d 734, 738 (6th Cir.1994) (hereafter *Laguna* ). The factors most pertinent to this case are:

> . . .
>
> (2) the pre-petition conduct of the debtor has been improper;
>
> (3) there are only few unsecured creditor;
>
> . . .
>
> (5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;
>
> (6) the filing of the petition effectively allows the debtor to evade court orders;
>
> . . .
>
> (8) the lack of possibility of reorganization.

*Id.; see also In re Wald,* 211 B.R. 359, 362 (Bankr.D.N.D.1997).[7] The United States Court of Appeals for the Tenth Circuit has endorsed the analysis found in *Laguna. See In re Nursery Land Dev., Inc.,* 91 F.3d 1414, 1416 (10th Cir.1996). The determination of whether a bankruptcy case has been filed in good faith is a matter left to the sound discretion of the bankruptcy court. *See Laguna,* 30 F.3d at 738.

The issue of good faith in this case is further complicated by the relationship between Mr. Nichols and Ms. Nichols, and the status of the Divorce Action. Generally, bankruptcy courts are loath to meddle in family matters, and defer if at all possible to the expertise of the state courts. "It is appropriate for bankruptcy courts to avoid incursion into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state brethren and their established expertise in such matters.' " *In re Thaggard,* 180 B.R. 659, 663 (M.D.Ala.1995) *citing Carver v. Carver,* 954 F.2d 1573, 1579 (11th Cir.), *cert. denied,* 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992) *citing Marane, Inc. v. McDonald's Corp.,* 755 F.2d 106, 107–09 (7th Cir.1985) (*quoting In re Graham,* 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)).

■ A New York bankruptcy court dismissed a chapter 11 case on the ground that it was filed in bad faith, where the debtor and his former spouse had "slugged it out for eight (8) years in the divorce action" . . . and the husband "[a]fter exhausting his appellate remedies and still unable to make peace with the equitable distribution awards made in the divorce action, . . . commenced this Chapter 11 case." *In re Purpura,* 170 B.R. 202, 204 (Bankr.E.D.N.Y.1994).

> Chapter 11 of the Bankruptcy Code is a powerful tool (i.e. automatic stay, marshalling and turnover of assets and discharge of debts) which can be initiated with virtual impunity. Any person who meets the minimal eligibility requirements contained in 11 U.S.C. § 109(d) may file a Chapter 11 petition. These minimal eligibility requirements render Chapter 11 amenable to abuse. The good faith standard for the filing and maintenance of Chapter 11 cases protects the jurisdictional integrity of the bankruptcy process. It is well established that a lack of good faith constitutes cause for dismissal of a chapter 11 case under 11 U.S.C. § 1112(b). As this Court has observed: The good faith requirement provides parties in interest and the bankruptcy courts with an important and useful policing tool for preserving the reorganization process for those Chapter 11 cases for

---

7. Omitted factors in the text are indicated by ellipses: The following factors were also cited:
 (1) the debtor has one asset;
 (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; and
 (7) the debtor has no ongoing business or employees.
 *Laguna,* 30 F.3d at 738.

which it was actually intended. Its proper application makes certain that debtors who seek bankruptcy reorganization protection do so for no purpose other than to accomplish the legitimate aims and objectives of the statute....

Where, as here, a debtor's Chapter 11 effort involves essentially a two party dispute based on state law, and the filing of relief represented a litigation tactic to stall and impede the enforcement of legal rights against the debtor, dismissal for "cause", i.e., bad faith filing is warranted.

*Id.* at 206–207 (citations omitted). A review of this case in light of the totality of the circumstances in general and the good faith non-exclusive factors in particular indicates that dismissal of this case is warranted.

### Pre–Petition Conduct of Mr. Nichols

There have been various issues raised as to the pre-petition conduct of Mr. Nichols that are indicative of his dissatisfaction with the State Court rulings in the Divorce Action. Mr. Nichols was cited with contempt by the State Court and imprisoned for failure to meet all of his support obligations. There is also an allegation, currently the subject of an adversary proceeding, that Mr. Nichols altered the deed to the Lake Cabin, by adding additional parties to the deed without the permission or knowledge of Ms. Nichols. There are strong indications that Mr. Nichols has concealed business interests, failed to disclose assets and failed to comply with proper orders of the State Court in the Divorce Action.

Moreover, Mr. Nichols has been evasive as to his business ownership interest not only in the Divorce Action but also in testimony to this Court, causing this Court to doubt his status as a sincere Chapter 11 debtor in need of the protection of the bankruptcy court to reorganize his affairs. A debtor of Mr. Nichols' education, sophistication and experience, who purports to have no knowledge or understanding of the business ownership interests he holds, puts himself in a precarious position and will evoke the skepticism of the Court.

### Creditor Pressure

Mr. Nichols testified that all his creditors were pressuring him with demands for the payment of his debts. However, Mr. Nichols failed to establish the presence of any significant creditor pressure other than that which existed as a result of the contempt proceedings in the Divorce Action. Even though Mr. Nichols lists almost twenty (20) unsecured creditors, few of them, besides Ms. Nichols hold any significant claims.

The debt owed to Noco is impugnable. This transaction is between Mr. Nichols and a corporation in which he has ownership interests and for which he serves as an executive. The amount of the debt varies from time to time. The repayment terms are peculiar, as payments upon the note are due as Mr. Nichols' future earnings allow. This surely is not an ordinary business practice with regard to the repayment of debts. In this intra-family transaction between Mr. Nichols and his brother, Richard J. Nichols, a promissory note did not come into being until approximately two (2) months before the bankruptcy was filed. Most importantly, there is no evidence that Noco exerted any pressure upon Mr. Nichols.

Mr. Nichols owes tax debts to the IRS in the amount of $10,539 and to the OTC in the amount of $6,314. However, there is no evidence of significant pressure for payment from either agency, especially considering that the brunt of the taxes was not even assessed until after the petition in bankruptcy was filed. It is highly unlikely that unsecured tax debts which were not the subject of any collection activities drove Mr. Nichols into bankruptcy.

The debt of $23,413 to his brother is a secured debt (secured by corporate stock) and no evidence was brought forth that his brother pressured him in any way for repayment. Another secured debt (secured by corporate stock) held by Community Bank in the amount of $11,000 was incurred one month prior to the filing of the bankruptcy for the payment of legal fees and incident expenses incurred in the current bankruptcy. No pressure for repayment was exerted by Community Bank pre-petition. Mr. Nichols also is a third party obligor on a debt of

$80,194 to American Bank. American Bank appeared at the January 26, 1998, hearing and advised the Court that all was well between American Bank and Mr. Nichols.

Most of the of the other scheduled unsecured debts are relatively modest; i.e., minor retail card debts, a somewhat larger charge card debt, the typical and ordinary monthly utility, phone and cable bills, and a small medical bill. All of the legal fees listed in the Debtor's schedules were incurred due to the Divorce Action. No evidence was presented to the Court, that any of these unsecured creditors drove Mr. Nichols to the bankruptcy forum. Mr. Nichols even attempted (and was denied by order of this Court) to hire one of his pre-petition law firms and creditors, the law firm of Barber & Bartz, as special counsel in this bankruptcy. *See Docket Nos. 38 and 49.* Therefore, considering the lack of creditor pressure from any of Mr. Nichols' creditors besides Ms. Nichols and the State Court in the Divorce Action, the Court must find that Mr. Nichols tried to avail himself of the protection of the bankruptcy court to ward off only one creditor, his estranged wife.

*The Standstill in the Divorce Action*

It is clear to the Court that the Debtor and one creditor, i.e., Ms. Nichols, have come to a standstill. The Divorce Action has been unresolved and remains unresolved for over four (4) years now. Mr. and Ms. Nichols have not progressed past the issuance of temporary support and alimony orders. The marital real property was not sold until recently under the supervision of the bankruptcy court. Mr. Nichols, unable to resolve the Divorce Action to his satisfaction in State Court, proceeded to the bankruptcy court, a forum which he hoped to find more favorable to his case.

*The Effect of This Bankruptcy Case on the Divorce Action*

Moreover, the filing of the petition in this Chapter 11 case has brought Mr. Nichols the protection of the automatic stay. Since the imposition of the automatic stay and in spite of this Court's Order Granting Relief from Automatic Stay to allow the Divorce Action to proceed, the Chapter 11 bankruptcy has effectively allowed the Debtor to evade State Court orders without facing contempt charges. Mr. Nichols, although paying the basic $1,800 per month in alimony and child support, has failed to pay other expenses incurred by Ms. Nichols and his daughters which are part of his support obligation as ordered by the State Court. Mr. Nichols has failed to pay Ms. Nichols' car payment, the credit card bill for operating expenses for Ms. Nichols' car, Cassidy's private school tuition and expenses, and the $5,000 fee for the appointment of an accountant to assess Mr. Nichols' business interests.

*Lack of Possibility of Reorganization*

This case has been pending for almost eight months. In that time, it has become obvious that this Debtor is unable to reorganize his estate without a conclusion of the Divorce Action; and the Divorce Action is hindered from proceeding due to the bankruptcy filing. Mr. Nichols has acknowledged that he cannot formulate a successful plan of reorganization until the Divorce Action is concluded.[8] The inability to effectuate a plan also constitutes cause for dismissal of a bankruptcy case. *See* § 1112(b)(2).

*Conclusion*

This case raises the issue of the propriety of bankruptcy court involvement in one of the most acrimonious of all two party disputes: the contested divorce. The Court has no

---

**8.** Paragraph 7 of the Motion to Extend reads as follows:

Until such time as alimony and a property settlement have been determined by the Tulsa County Court, Debtor is unable to fashion a plan of reorganization which would encompass the determinations made by the Tulsa County Court. Debtor could file a plan of reorganization prior to conclusion of the divorce proceedings which proposes a settlement to Mrs. Nichols. However, Debtor believes

that such a plan would just result in additional protracted litigation between the parties in the Bankruptcy Court and one of the purposes of filing Debtor's bankruptcy case was to reduce the amount of litigation by and between Debtor and Mrs. Nichols.

*See Docket No. 70.* Though artfully crafted, this paragraph is a succinct statement of something which became obvious during the January 26, 1998, hearing: namely, that this Debtor cannot formulate a plan of reorganization until the Divorce Action is completed.

doubt that this case was filed solely because Mr. and Ms. Nichols were unable to use the judicial mechanism of the state of Oklahoma to resolve their differences. Little, if any, material pre-petition creditor pressure is evident in this case, except for that exerted by Ms. Nichols. The bankruptcy case has brought Mr. Nichols the benefits of the automatic stay, and allowed him to avoid further contempt citations from the State Court while paying less than he was ordered to by that Court. This case has effectively brought the Divorce Action to a standstill. If the Divorce Action is resolved, the need for this bankruptcy case is questionable.

■ In sum, considering the totality of the circumstances, the Court finds that this case was not filed in good faith. The Court further finds that use of the bankruptcy court to resolve a marital dispute is rarely if ever appropriate, and is certainly not appropriate on the facts presently before it. The Court emphasizes that "[i]t is appropriate for bankruptcy courts to avoid incursion into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state brethren and their established expertise in such matters.'" *In re Thaggard*, 180 B.R. at 663 (citation omitted). Since the Debtor's estate cannot be reorganized without finalizing the divorce and equitable property division, and conversely the divorce cannot be finalized while the Debtor's estate is in bankruptcy, this Court can find no legitimate purpose or benefit for retaining this Debtor and his estate in the Chapter 11 bankruptcy. Therefore, the Motion to Dismiss under § 1112(b) is granted.

### Disposition of Sale Proceeds of the Residence and the Lake Cabin

■ Mr. Nichols currently holds in one or more of his debtor-in-possession accounts the sum of approximately $141,770.89, plus accrued interest thereon, which represents the net proceeds of sale of the Residence and the Lake Cabin.[9] Pursuant to the orders authorizing the sale of these properties,

All remaining proceeds from the sale of the Property and after the payment of the liens and closing costs set forth above [in the Order] shall be deposited into an interest bearing debtor in possession bank account or time deposit and any remaining liens, claims and encumbrances (to the extent valid) shall attach to such proceeds. Provided, that no distributions from escrow shall be made until further Order of this Court.

*Docket Nos. 34 and 64.* The record establishes that the Residence and the Lake Cabin are assets of the marital estate of Mr. and Ms. Nichols, with a possible claim to a portion of the proceeds of the Lake Cabin by Richard and Patricia Nichols. In order to preserve this asset, and to facilitate the administration of the Divorce Action, this Court will require as part of its order dismissing this case that the proceeds of the sale of the Residence and the Lake Cabin are to be surrendered to the jurisdiction of the State Court for determination in the Divorce Action. It is not the intention of this Court to leave Richard and/or Patricia Nichols without a remedy. They are free to take whatever action they deem appropriate to establish their interests in the Lake Cabin proceeds. *See generally* Okla.Stat.Ann. tit. 12, § 2024 (West 1993) (outlining right of intervention); *See Logan v. Smith*, 602 P.2d 647 (Okla.1979) (noting that intervention allowed in divorce action where interests in real property may be affected by the action).

### The Motion for Clarification

The Motion for Clarification is moot since the Motion to Dismiss is granted.

### The Motion to Extend Exclusive Period

The Motion to Extend is moot since the Motion to Dismiss is granted.

A separate order consistent with this Memorandum Opinion is entered concurrently herewith.

### *JUDGMENT*

THIS MATTER comes before the Court pursuant to the Motion to Dismiss Bankrupt-

---

9. The net proceeds of the Residence were $99,211.86; of the Lake Cabin, $42,559.03. These funds have been held at interest; the exact amount as of the date of this opinion is unknown.

cy filed by Gayle Nichols, Creditor herein ("Ms. Nichols"), on October 28, 1997, and the Motion for Clarification of Order Granting Relief from Stay filed by Ms. Nichols on October 27, 1997, and the Motion to Extend Exclusive Period of Section 1121(B) and Notice of Opportunity for Hearing filed by Orville B. Nichols ("Mr. Nichols"). A hearing was held in the matter on January 26, 1998. Ms. Nichols appeared personally and by and through her attorney Richard T. Garren. Mr. Nichols appeared personally and by and through his attorney Neal Tomlins. American Bank & Trust Company appeared by and through its attorney, Rodney Edwards. Richard Nichols appeared by and through his attorney, Gary McDonald. The issues having been duly considered and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

IT IS HEREBY ORDERED that the Motion to Dismiss Bankruptcy be, and the same hereby is, granted.

IT IS FURTHER ORDERED that the Chapter 11 bankruptcy case of Orville B. Nichols, II, be, the same hereby is, dismissed. ·

IT IS FURTHER ORDERED that the Motion for Clarification of Order Granting Relief from Stay be, and the same hereby is, denied as moot.

IT IS FURTHER ORDERED that the Motion to Extend Exclusive Period of Section 1121(b) be, and the same hereby is, denied as moot.

IT IS FURTHER ORDERED that the proceeds of the sale of the Residence and the Lake Cabin, as those terms are defined in the Memorandum Opinion, are to be surrendered to the jurisdiction of the Tulsa County District Court for determination in the action entitled *Gayle L. Nichols, Plaintiff v. Orville B. Nichols, Defendant,* FD 94–00230.